

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE OCWEN FEDERAL BANK FSB | ) | MDL No. 1604 |
| MORTGAGE SERVICING LITIGATION | ) | Lead Case No. 04 C 2714 |
| | ) | Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Class Defendants' Joint Motion for Partial Summary Judgment. For the following reasons, and with the following specifications, Class Defendants' Motion is granted.

## I. BACKGROUND

### A. Facts

Plaintiffs in this case are numerous individuals who hold home-secured loans serviced by Defendants Ocwen Financial Corporation and Ocwen Federal Bank FSB (collectively "Ocwen"). Defendants include Ocwen and Moss, Codilis, Stawiarsky, Morris, Schneider & Prior, LLP ("Moss"). Ocwen Financial Corporation is a publicly traded financial services company, engaged in a variety of businesses related to mortgage servicing and real estate asset management. Ocwen Federal Bank FSB is a wholly owned subsidiary of Ocwen Financial Corporation. Moss is a partnership that acts as legal counsel and debt collector for Ocwen.

When Ocwen determined that Plaintiffs' home loans were in default, Ocwen notified Moss. Moss then sent form letters to Plaintiffs, advising Plaintiffs that (1) their loans were in default, and (2) the loans would be accelerated and foreclosure proceedings would be started, if Plaintiffs failed to cure the defaults. Moss then charged Ocwen a fee of $285 per homeowner for

1

services related to, and the sending of, these letters. Ocwen then charged the homeowners that same $285, in addition to other fees and charges assessed in the event of default and foreclosure proceedings.

As of April 25, 2005, Plaintiffs have filed thirty-two related Complaints in this matter. These cases have been consolidated into the present multi-district litigation ("MDL") suit. See Transfer Order, April 13, 2004 (establishing MDL No. 1604). Plaintiffs' consolidated twenty-three count Complaint alleges generally that Defendants improperly initiated default and foreclosure proceedings upon Plaintiffs, and engaged in unauthorized and unlawful debt collection practices to the detriment of Plaintiffs. Plaintiffs allege violations of, *inter alia*, the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) and various state consumer protection statutes. Plaintiffs also bring several common law counts in their consolidated Complaint, such as unjust enrichment and breach of contract. Plaintiffs ask that the court, *inter alia*, order that Defendants pay restitution to Plaintiffs, and also order that Defendants be enjoined from any further similar wrongful conduct.

A number of the counts in Plaintiffs' Complaint allege that Ocwen collected unauthorized "recoverable breach fees" from Plaintiffs during the course of servicing Plaintiffs' home loans. Compl., ¶ 57 ("Ocwen routinely demands and collects "Recoverable Breach Fees" from borrowers that are not authorized in borrowers' notes and mortgages and as to which Ocwen provides no explanation for the fees' basis."); id., ¶ 102 ("Defendants violated the FDCPA . . . by . . . collecting 'recoverable breach fees' that were not authorized by contract . . . ."); id., ¶ 140 ("Defendants engaged in unlawful, unfair, or fraudulent business acts and practices in violation of the California Business & Professions Code . . . by . . . imposing improper . . . recoverable

breach fees . . . ."). These fees, Plaintiffs allege, were assessed in the amount of $95 for each of numerous form letters sent to Plaintiffs in default on their loans.

A number of other counts refer to " force-placed insurance, and unauthorized charges," Compl., ¶ 109, "attorneys' fees," id., ¶ 120, "improper charges," id., ¶ 135, and "collection costs," id., ¶ 186(d). In addition, paragraph four of the Complaint identifies several allegedly unauthorized and/or unlawful "fees" and "costs" charged to Plaintiffs: "'recoverable breach fees,' unnecessary hazard insurance premiums, attorneys' fees, unexpended foreclosure-related fees and costs, and other fees that are either not legally due under the mortgage contract or applicable law, or are in excess of amounts legally due." Plaintiffs thus identify a number of different "costs" and/or "fees" that they assert were unlawfully charged to their accounts by Ocwen, in addition to the already mentioned "recoverable breach fees." Plaintiffs also allege an assortment of other wrongdoing by Ocwen and Moss. For example, Plaintiffs allege that their mortgage payments are not timely credited by Ocwen, resulting in unjustified late charges or default, that Ocwen does not properly respond to requests for account information from borrowers, and that Ocwen's practices violate various state Business statutes and common law principles. The court therefore notes that while the issue of "recoverable breach fees" (and other fees related to default or foreclosure proceedings) does play an important role in this litigation, this issue is by no means dispositive of all, or even most, of Plaintiffs' allegations.

## B. Procedural History

On April 13, 2004, a number of related cases in which holders of home loans serviced by Ocwen allege wrongdoing by Defendants were consolidated into MDL Case number 1604. See Transfer Order, April 13, 2004 (establishing MDL No. 1604). Prior to consolidation, in the

related case of Soto v. Ocwen Federal Bank, FSB, this court issued an Order in response to Ocwen's Motion for Summary Judgment. The contents of this Order are central to Defendants' instant Motion for Summary Judgment. In that Order, the court reasoned,

> [T]he court finds that Ocwen acted within the terms of the contracts when it charged Plaintiffs the $285 "recoverable breach fee." The facts show that Ocwen incurred expenses while pursuing its legal remedies against the defaulting Plaintiffs. Ocwen hired the law firm of Moss Codilis to take whatever actions it determined were necessary in pursuing Ocwen's rights under the contracts . . . Moss Codilis sent three default letters to Plaintiffs seeking payment on the default . . . This course of action was clearly in pursuit of Ocwen's legal rights associated with Plaintiffs' default. Thus, the $285 fee, whether it is styled a "recoverable breach fee," an attorney fee, or any other type of fee needed to protect Ocwen's interest in the mortgaged property, including a collection fee, is clearly authorized by the contracts. See Pls.' Resp. to Def.'s LR56.1 Statement (admitting that paragraphs 7 and 21 of the mortgage and paragraph 6 of the note collectively authorize Ocwen to charge Plaintiffs for all expenses necessary to protect Ocwen's rights in the mortgaged property); see also Majchrowski v. Norwest Mortgage, Inc., 6 F. Supp. 2d 946, 965 (N.D. Ill. 1998) (interpreting the same contract provisions as allowing the lender to charge any fees necessary to protect its rights in the property even if not expressly stated in the agreements). Because the contract language is unambiguous on this issue, the court need not resort to extrinsic evidence to interpret the provisions. See Emergency Medical Care v. Marion Memorial Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996). Therefore, no genuine issues of material fact exist as to Counts I, III, and VI of Plaintiffs' Amended Complaint – all which seek relief for Defendants' actions regarding the propriety of charging the "recoverable breach fee," and summary judgment is appropriate. See id. at 1062.

Minute Order of August 26, 2003. The court then granted summary judgment to Defendants on the issue of whether this "recoverable breach fee" (or any other default-related fee) was authorized and lawful under the loan contracts. Id.

In the instant consolidated action, Class Defendants now move for partial summary judgment, asserting that this court's Order of August 26, 2003, precludes Plaintiffs from pursuing any causes of action based on allegations that the "recoverable breach fees" (or any default-related fees) are unauthorized or unlawful under Plaintiffs' loan contracts. This Motion is fully briefed and before the court.

4

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of N. Newton School Corp., 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Gil v. Reed, 381 F.3d 649, 651 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Gil, 381 F.3d at 651. However, the inferences construed in the non-moving party's favor must be drawn from specific facts

5

identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Summary Judgment and Contract Interpretation

The Seventh Circuit favors summary judgment as a means to resolve disputes over the interpretation of a contract. Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 564-65 (7th Cir. 1995) ("[s]ummary judgment is particularly appropriate in cases involving the interpretation of contracts") (citing Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989)); Metalex Corp. v. Uniden Corp. of America, 863 F.2d 1331, 1333 (7th Cir. 1988) ("[c]ontract interpretation is a subject particularly suited to disposition by summary judgment"); Majchrowski v. Norwest Mort., 6 F. Supp. 2d 946, 963 (N.D. Ill. 1998) ("[s]ummary judgment is particularly appropriate for resolving contract interpretation disputes") (citing Murphy, 61 F.3d at 564-65). Contract disputes are especially well suited to resolution by summary judgment when the terms of the contract are unambiguous. "If a contract is unambiguous, by definition no issues of material fact exist regarding the contract's interpretation; that interpretation is a question of law for the court." Metalex, 863 F.2d at 1333; see also Murphy, 61 F.3d at 565 ("[w]here the contract is unambiguous, a court must determine the meaning of the contract as a matter of law"); McWane, Inc. v. Crow Chicago Indus., 224 F.3d 582, 584 (7th Cir. 2000) ("[i]f the district court determines that the contract is unambiguous, it may determine its meaning as a matter of law").

The initial inquiry for the district court is thus the issue of whether the contract in question is ambiguous. Majchrowski, 6 F. Supp. 2d at 963 ("[t]he threshold inquiry of law for

6

the court is whether the contract is ambiguous"). A contract is not ambiguous "if it is susceptible to only one reasonable interpretation." Murphy, 61 F.3d at 565. In other words, the mere fact that parties disagree over the meaning of a contractual term does not indicate that the contract is ambiguous. Majchrowski, 6 F. Supp. 2d at 963. Ambiguity exists only when "both parties interpretive positions [are] reasonable." Id. A party asserting that a contract is ambiguous has the burden of "convinc[ing] a judge that this is the case." Murphy, 61 F.3d at 565 (the party claiming ambiguity must "produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous").

If a court determines that a contract is unambiguous, the next step is for the court to determine the plain and obvious meaning of the contractual term in question. Majchrowski, 6 F. Supp. 2d at 963. "[W]e begin our analysis with the language of the contract itself . . . If the language unambiguously answers the question at issue, the inquiry is over." Emergency Medical Care v. Marion Mem. Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996); see also McWane, 224 F.3d at 584 ("the meaning of the contract must be determined from the words or language used") (internal quotation marks and citations omitted). Where "a court can have reasonable confidence that it knows what the contract means," it can therefore decide the issue at hand on the basis of the contractual language alone. See Overhauser v. United States, 45 F.3d 1085, 1088 (7th Cir. 1995).

## C. The Terms of the Loan Contracts Unambiguously Answer the Question of Whether the "Recoverable Breach Fees" were Authorized

### 1. The *Soto* Decision

Because the court's Order in the Soto case provides the conceptual basis for this decision,

7

the court offers a brief review of that Order's two central points. First, the court found that the loan contracts (the mortgages and the notes signed by Plaintiffs) were clear and unambiguous on the issue of whether the fees in question were authorized. Second, the court determined, based on the clear and unambiguous language in these contracts, that these fees were, in fact, authorized by the contracts. "[T]he $285 fee, whether it is styled a 'recoverable breach fee,' an attorney fee, or any other type of fee needed to protect Ocwen's interest in the mortgaged property, including a collection fee, is clearly authorized by the contracts." Minute Order of August 26, 2003. The two central findings of the court in the Soto decision are thus that the contract language was clear and unambiguous, and that the contracts authorized the fees in question.

### 2. *The Terms of the Contracts*

As the court found in Soto, in this consolidated case the court also finds that the contracts agreed to and signed by Plaintiffs are clear and unambiguous, and that the terms of those contracts unquestionably authorize the fees at issue.[1] For example, paragraph 21 of the Mortgage provides in part:

> 21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.... Lender, at its option may require immediate payment in full of all sums secured by this Security Instrument . . . by judicial proceeding . . . . *Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.*

Class Defs.' Joint Mot. for Partial Summ. J., Ex. 3, ¶ 21 (emphasis added). Paragraph 6 of the

---

[1] Plaintiffs admit that the loan contracts contain predominately uniform provisions. Compl., ¶ 83.

Note provides, in part:

> 6. Borrower's Failure To Pay as Required
>
> . . .
>
> (E) Payment of Note Holder's Costs and Expenses
> If the Note Holder has required me to pay immediately in full as described above, *the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note . . . . Those expenses include, for example, reasonable attorneys' fees.*

Id., Ex. 2, ¶ 6 (emphasis added). Finally, paragraph 7 of the Mortgage provides in part:

> 7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Agreement, or there is a legal proceeding that may significantly affect the Lender's rights in the Property . . . then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include . . . *paying reasonable attorneys' fees* . . . .

Id., Ex. 3, ¶ 7 (emphasis added).

In very clear and unambiguous language, these contractual provisions taken together give Ocwen a contractual right to charge defaulting borrowers for all legitimate expenses incurred in pursuing its legal remedies against them. See Murphy, 61 F.3d at 565 (the court should read related documents together). These terms are not susceptible to more than one reasonable interpretation. See id. The language of these contractual terms unambiguously settles the question of whether the "recoverable breach fees" or other default or foreclosure related expenses are authorized by the contract, and the court's inquiry into this particular issue is thus concluded. See Emergency Medical Care, 94 F.3d at 1061.

## D. Class Defendants' Motion for Partial Summary Judgment is Granted with the Following Specifications

Partial summary judgment is granted to Defendants on the following specific issue: the court has found, as a matter of law, that no dispute of material fact exists as to whether the loan

contracts signed by Plaintiffs authorize the imposition of "recoverable breach fees" or any other legitimate default or foreclosure related expenses. This means that Defendant has won summary judgment on Plaintiff's claims, but only to the specific and limited extent that these claims challenge the propriety of the above mentioned fees. The court takes no position, at present, on all other matters and questions presented in this suit. The court takes no position, for instance, on whether the loan contracts were breached in ways not related to the imposition of these fees, on whether insurance charges were improperly added to Plaintiffs accounts, or on whether Defendants actions in declaring Plaintiffs in default were lawful under any state statutes or the common law.

## III. CONCLUSION

For the foregoing reasons, and with the foregoing limitations and specifications, Class Defendants' Motion for Partial Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 4-25-05