IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE OCWEN FEDERAL BANK FSB | ) | MDL No. 1604 |
| MORTGAGE SERVICING LITIGATION | ) | Lead Case No. 04 C 2714 |
| | ) | Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Ocwen Loan Servicing, LLC's Motion for a Preliminary Injunction.[1] For the following reasons, the Motion is granted.

## I. INTRODUCTION

### A. Facts

Plaintiffs in this Multi-District Litigation ("MDL") are numerous individuals who hold home loans serviced by Defendant Ocwen Loan Servicing, LLC ("Ocwen"). Defendants include Ocwen and Moss, Codilis, Stawiarsky, Morris, Schneider & Prior, LLP ("Moss"). Moss is a partnership that acts as legal counsel and debt collector for Ocwen. During the course of servicing Plaintiffs' home loans, Ocwen determined that these loans were in default. Ocwen then notified Moss. Moss then sent form letters to Plaintiffs, advising Plaintiffs that (1) their loans were in default, and (2) the loans would be accelerated and foreclosure proceedings would be started, if Plaintiffs failed to cure the defaults. Moss then charged Ocwen a "recoverable breach fee" of $285 per homeowner for services related to, and the sending of, these letters. Ocwen then charged the homeowners that same $285, in addition to other fees and charges routinely assessed

---

[1] Effective July 1, 2005, Ocwen Federal Bank FSB voluntarily dissolved immediately after transferring its mortgage servicing business to Ocwen Loan Servicing, LLC, which has succeeded to the rights and obligations of the former entity.

1

in the event of default and foreclosure proceedings.

Plaintiffs seek to hold Ocwen, Moss, and other Defendants liable for these and other numerous alleged wrongdoings related to Ocwen's servicing of Plaintiffs' home loans. For example, Plaintiffs allege that Ocwen has failed to timely post Plaintiffs' loan payments, causing Plaintiffs to erroneously appear to be in default, and that Ocwen has forced Plaintiffs to purchase insurance for properties that were already insured.

## B. Procedural History

As of November 9, 2005, Plaintiffs have filed forty-eight related Complaints in this matter. These cases have been consolidated into the present MDL, and transferred to this court for orderly and efficient disposition. See Transfer Order, April 14, 2004 (establishing MDL No. 1604). Plaintiffs' twenty-three count Consolidated Class Action Complaint alleges generally that Defendants improperly initiated default and foreclosure proceedings upon Plaintiffs, and engaged in various unauthorized and unlawful mortgage servicing and debt collection practices to the detriment of Plaintiffs (including, *inter alia*, the imposition of the "recoverable breach fee"). Plaintiffs also allege violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*),[2] the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*), and various state consumer protection statutes. In addition, Plaintiffs bring several common law counts in their Consolidated Complaint, such as unjust enrichment and breach of contract. Plaintiffs ask that the court, *inter alia*, order that Defendants pay damages and restitution to Plaintiffs, and also order that Defendants be enjoined from any further similar wrongful conduct.

---

[2] See Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997) (Posner, J.) (providing a sample dunning letter which would give the debtor all the information the Fair Debt Collection Practices Act requires); see also Durkin v. Equifax Check Services, Inc., 406 F.3d 410 (7th Cir. 2005).

On April 25, 2005, the court granted Ocwen's Motion for Partial Summary Judgment, holding that there was no genuine issue of material fact as to whether the "recoverable breach fee" was authorized by the loan contracts, but reserving judgment on the merits of the remainder of Plaintiffs' claims. In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, MDL No. 1604, Lead Case No. 04 C 2714, 2005 U.S. Dist. LEXIS 8274 (N.D. Ill. Apr. 25, 2005).

Ocwen filed its Motion for a Preliminary Injunction on October 14, 2005. Ocwen initially asked the court to enjoin three law firms, Pipkin, Oliver & Bradley; Hilliard and Munoz, LLP; and Ellis, Castarphen, Dougherty, and Goldenthal, P.C. ("Texas Counsel"), from litigating or participating in any pending or future lawsuit in state or federal court that asserts mortgage servicing allegations encompassed within the Consolidated Complaint in MDL No. 1604, until pretrial proceedings in MDL No. 1604 are completed. Texas Counsel are presently attorneys of record in MDL No. 1604, as the MDL Panel has transferred three of their cases to this court. Texas Counsel filed their Response on October 20, 2005, and Ocwen filed its Reply on October 24, 2005.

On November 7, 2005, however, Ocwen filed its Supplemental Memorandum in Support of Preliminary Injunction. In that Supplemental Memorandum, Ocwen asserts that Texas Counsel are seeking to evade any injunction this court might issue by hiring co-counsel to move ahead with state court action, in the event that Texas Counsel are enjoined from doing so. By way of affidavit, Ocwen represents that Robert Hilliard, of the Texas Counsel firm Hilliard and Munoz, made the following statement on Friday November 4, 2005, in open court in the 212th Judicial District of Galveston County, Texas. "[I]f [Judge Norgle] rules in favor of Ocwen . . . we will still go to trial, it will just be different faces than us." Ocwen now asks the court to

3

enjoin Texas Counsel, and their clients and co-counsel, from litigating or otherwise participating in any pending or future lawsuit in state or federal court that asserts mortgage servicing allegations encompassed within the Consolidated Complaint in MDL No. 1604, until pretrial proceedings in MDL No. 1604 are completed. Texas Counsel filed their Reply to Supplemental Memorandum on November 9, 2005. The matter is fully briefed and before the court.

## II. DISCUSSION

### A. The Federal Courts' Power to Enjoin Parallel State Court Litigation

The power of a federal court to enjoin parallel state court litigation flows from the interplay between two federal statutes, the All Writs Act ("AWA") and the Anti-Injunction Act ("AIA"). The AWA, 28 U.S.C. § 1651(a), provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The AIA, 28 U.S.C. § 2283, provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The AWA thus gives federal courts broad authority to issue whatever Writs may be necessary to preserve the courts' jurisdictional powers. The AIA, however, acts as a counterbalance to the sweeping powers granted to federal courts by the AWA. The AIA "forbids any federal injunction or stay of state litigation" unless such an injunction meets one of three exceptions: it is expressly authorized by Congress, or is issued in order to aid the jurisdiction of a federal court, or to protect or effectuate the judgments of a federal court. In the Matter of: Bridgestone/Firestone, Inc., 333 F.3d 763, 765 (7th Cir. 2003) (enjoining members of putative classes and their attorneys, in a federal MDL case involving

4

defective tires, from attempting to have nationwide classes certified in state courts).

The Seventh Circuit reads these two Acts together to provide that while federal courts ordinarily may not enjoin state actions, where a federal MDL court's jurisdictional power is sufficiently threatened by a parallel state court action, such an injunction may issue. In Winkler v. Eli Lilly & Co., a federal MDL case involving injuries allegedly caused by the prescription drug Prozac, the Seventh Circuit indicated that "an injunction [of a parallel state court action] may be issued where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" 101 F.3d 1196, 1201 (7th Cir. 1996) (quoting Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295 (1970)). In other words, in MDL cases like the instant one, the jurisdictional exception within the AIA "parallels the federal courts' power under the All Writs Act 'to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" Id. (quoting United States v. New York Telephone, 434 U.S. 159, 173 (1977)). Federal MDL courts are therefore empowered, in the Seventh Circuit, "'to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.'" Id. at 1202 (quoting Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. CHI. L. REV. 717, 754 (1977)).

Other Circuits have also recognized that district courts have the power to issue these sorts of injunctions. See Newby v. Enron Corp., 302 F.3d 295, 300 (5th Cir. 2002) (federal courts possess the power to enjoin "vexatious litigants from filing future [parallel] state court actions" in MDL cases); Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877, 880-82 (11th Cir. 1989); In re

5

Baldwin-United Corp., 770 F.2d 328, 335 (2nd Cir. 1985) (a district court handling a MDL case may enjoin parallel state court actions to prevent the relitigation of matters already decided by the district court); In re Corrugated Container Antitrust Litigation, 659 F.2d 1332, 1334 (5th Cir. 1981); Blue Cross of Cal. v. Smithkline Beecham Clinical Laboratories, Inc., 108 F. Supp. 2d 130, 135 (D. Conn. 2000) (district courts may issue these injunctions "to protect the court's judgment and to prevent, in [] multidistrict litigation, intolerable conditions that could ensue from conflicting orders from different courts"); In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, 93 F. Supp. 2d 876, 880 (M.D. Tenn. 2000).

Enjoining a state court action, however, is not a step that a federal court should undertake lightly. In enacting the AIA, Congress recognized the extraordinary nature of such an injunction, and intended to codify a "presumption against injunctive relief." See Kara M. Moorcroft, *The Path to Preclusion: Federal Injunctive Relief against Nationwide Classes in State Court*, 54 DUKE L.J. 221, 232 (2004).

> Because an injunction is a "highly intrusive remedy," traditional principles of comity, federalism, and equity counsel that federal courts exercise hesitation before so intruding upon state court matters. The Anti-Injunction Act (AIA) codifies this unwillingness to intrude into state matters by forbidding a federal court from issuing an injunction unless it falls within one of three exceptions.

Id. (quoting Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 525 (1985)); see also Alexander Moeser, *Precluding the Absent Claimant from Re-Arguing Class Certification: Pragmatism and the "Day in Court" Ideal*, 92 KY. L.J. 817, 826 (2003-04) ("this injunctive power is limited by the Anti-Injunction Act"); Richard W. Painter, *Responding to a False Alarm: Federal Preemption of State Securities Fraud Causes of Action*, 84 CORNELL L. REV. 1, 63-64 n.341 (1998-99) ("federal courts have used this [injunctive] power sparingly, principally because of the

counterbalancing instruction of the Anti-Injunction Act that federal courts may not (except in extraordinary cases) enjoin state court proceedings").

## B. Ocwen's Motion for a Preliminary Injunction

Ocwen has moved the court to preliminarily enjoin Texas Counsel, and their clients and co-counsel, from litigating or otherwise participating in any pending or future lawsuit in state or federal court that asserts mortgage servicing allegations encompassed within the Consolidated Complaint in MDL No. 1604, until pretrial proceedings in MDL No. 1604 are completed. The court first notes that there is no question as to its jurisdiction in this matter. The court has personal jurisdiction over Texas Counsel and co-counsel because they represent individuals who make up a subset of the putative MDL class, and because Texas Counsel are already of record in this MDL by virtue of the MDL Panel's Order transferring three of their mortgage servicing cases to this court. See Bridgestone/Firestone, 333 F.3d at 768 ("unnamed class members have the status of parties for many purposes and are bound by [MDL court rulings] whether or not the court otherwise would have had personal jurisdiction over them"); In re Diet Drugs Prods. Liability Litigation, 282 F.3d 220, 231 (3rd Cir. 2002) ("the District Court had personal jurisdiction over all unnamed members of the [MDL] class, including those members of the [state court] class. Because the District Court had personal jurisdiction over members of the [state court class], it also had jurisdiction over attorneys purporting to represent, and act on behalf of, that class - a subset of the [MDL] class").

Ordinarily, a court will engage in the following analysis to determine whether a preliminary injunction should issue. First, the court will ask whether the party seeking the injunction has shown that (1) it has some likelihood of success on the merits, (2) there is no

7

adequate remedy at law, and (3) it will suffer irreparable harm if no injunction issues. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). If these conditions have been met, the court then "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." Id. The court must next consider "the public interest (non-parties) in denying or granting the injunction." Id. Finally, the court must weigh all these factors together, and come to an equitable decision regarding whether to issue the injunction. Id.

However, in a case such as this one, where the court is presented with an extraordinary situation in which various parallel state court actions threaten the court's ability to effectively control Multi-District Litigation, it is the Winkler standard that applies. Ocwen asserts that Texas counsel have (1) recruited hundreds of potential claimants to file actions challenging the very same mortgage servicing practices which are at issue in this MDL, (2) required these potential claimants to prospectively agree to opt out of the putative class in this MDL, and (3) stated their intention to distribute materials obtained in their parallel state suits to Plaintiffs' counsel in this MDL, even though the court has issued a stay of discovery. Such actions, if not enjoined, could seriously hinder the court's ability to effectively carry out its responsibilities under 28 U.S.C. § 1407.

> The district court's power to control multidistrict litigation is established by 28 U.S.C. § 1407, and . . . with that power comes the duty to exercise it as efficiently as possible. An important aspect of that control is to prevent predatory discovery, especially of sensitive documents, ensuring that litigants use discovery properly as an evidence gathering tool, and not as a weapon. Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings. Where a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts to effectively manage the complex litigation at hand, injunctive relief is proper.

8

Winkler, 101 F.3d at 1202 (internal citations omitted).

Under the Winkler standard, a district court handling a MDL case may enjoin a state court action where this is necessary to guard its jurisdiction, or to protect the integrity of its pre-trial orders. Id. at 1203 ("the [AWA and the AIA] in concert permit a district court, under certain circumstances, to issue an injunction to safeguard a pre-trial ruling like the discovery order at issue here"). The district court's authority to issue such an injunction is not limitless, however. "[T]he district court has authority . . . to enjoin only those persons (and their counsel) whose cases are presently part of [the MDL], or who were properly part of such [MDL] at the time the ruling in question was made." Id.

The court determines that allowing Texas Counsel, or their clients or co-counsel, to continue on their present course would seriously jeopardize the court's ability to effectively manage this MDL. The court was presented with this case by the MDL Panel on April 14, 2004, and the court has a duty to manage this litigation "as efficiently as possible." See id. at 1202 (citing 28 U.S.C. § 1407). To permit Texas Counsel, or their clients or co-counsel, to pursue numerous parallel actions in state court would subject this court's pre-trial Orders, including its Order granting Ocwen's Motion for Partial Summary Judgment, to numerous instances of second guessing by state courts, and could well result in violations of the court's pre-trial Order staying discovery. While federal district courts are advised to tread lightly when considering whether to enjoin state court actions, see Moorcroft, supra, at 232, this situation falls squarely within the parameters set out by the Winkler court for such an injunction. Winkler, 101 F.3d at 1205 ("district courts in charge of complex multidistrict litigation have the authority to issue injunctions to protect the integrity of their pre-trial rulings . . . .").

9

Texas Counsel, and their clients and co-counsel, are therefore preliminarily enjoined from litigating or otherwise participating in any pending or future lawsuit in a federal or state court that asserts mortgage servicing allegations encompassed within the Consolidated Complaint in MDL No. 1604, until such time as pretrial proceedings in MDL No. 1604 are completed, or until further Order of the court. To rule otherwise would plainly frustrate and defeat the purposes of the MDL Panel, which has consolidated forty-eight separate mortgage servicing cases into MDL No. 1604, and has assigned to this court the responsibility of adjudicating these cases in an orderly and efficient manner. See id. at 1202.

The court also notes that Texas Counsel's attempt to circumvent a possible injunction smacks of legal mischief. Although the court certainly recognizes that attorneys have a duty to zealously represent their clients, Texas Counsel will not be permitted to avoid this injunction simply by hiring "different faces" as co-counsel. The court clearly has personal jurisdiction over absent, unnamed putative class members. See Firestone/Bridgestone, 333 F.3d at 768. The court thus has personal jurisdiction over any attorneys representing such putative class members. See Diet Drugs, 282 F.3d at 231. This preliminary injunction therefore applies to Texas Counsel, their clients, and their co-counsel.

### III. CONCLUSION

For the foregoing reasons, Ocwen's Motion for a Preliminary Injunction is granted.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: November 9, 2005

10