UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE OCWEN FEDERAL BANK FSB MORTGAGE SERVICING LITIGATION | ) ) ) ) | MDL No. 1604 Lead Case No. 04 C 2714 Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Class Defendants' Joint Motion to Dismiss Plaintiffs' State-Law Claims on Federal Preemption Grounds. For the following reasons, the Motion is denied.

## I. BACKGROUND

### A. Facts

Plaintiffs in this Multi-District Litigation ("MDL") are numerous individuals who hold home loans serviced by Defendant Ocwen Loan Servicing, LLC ("Ocwen").[1] Defendants include Ocwen and Moss, Codilis, Stawiarsky, Morris, Schneider & Prior, LLP ("Moss"). Ocwen is a financial services company engaged in numerous businesses related to, *inter alia*, mortgage servicing. Moss is a partnership that acts as legal counsel and debt collector for Ocwen.

Plaintiffs allege that Ocwen, acting in concert with Moss, breached loan agreements by ignoring grace periods, misapplying and failing to apply loan payments, improperly charging late fees, and force-placing insurance on properties already insured. Plaintiffs also allege that Defendants are engaging in a pattern of unfair and overly aggressive loan servicing, including the assessing of unwarranted fees, declaring home loans to be in default prematurely, and instigating unfair and illegal foreclosure proceedings.

---

[1] Effective July 1, 2005, Ocwen Federal Bank FSB voluntarily dissolved immediately after transferring its mortgage servicing business to Ocwen Loan Servicing, LLC, which has succeeded to the rights and obligations of the former entity.

1

## B. Procedural History

As of March 20, 2006, Plaintiffs have filed fifty-one related Complaints in this matter. These cases have been consolidated into the present MDL, and transferred to this court for orderly and efficient disposition. See Transfer Order, April 14, 2004 (establishing MDL No. 1604). In their twenty-three count Consolidated Complaint, Plaintiffs allege, *inter alia*, violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*), the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*), and various state consumer protection statutes. In addition, Plaintiffs bring several common law counts in this Complaint, such as unjust enrichment and breach of contract. Plaintiffs ask that the court, *inter alia*, order that Defendants pay damages and restitution to Plaintiffs, and also order that Defendants be enjoined from any further similar wrongful conduct.

On April 25, 2005, the court granted Ocwen's Motion for Partial Summary Judgment, holding that there was no genuine issue of material fact as to whether a "recoverable breach fee" was authorized by the loan contracts, but reserving judgment on the merits of the remainder of Plaintiffs' claims. In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, MDL No. 1604, Lead Case No. 04 C 2714, 2005 U.S. Dist. LEXIS 8274 (N.D. Ill. Apr. 25, 2005).

On November 9, 2005, the court granted Ocwen's Motion for a Preliminary Injunction. The court enjoined three Texas law firms from proceeding with litigation in the Texas state court system in which Texas homeowners had filed similar complaints against Ocwen. Ocwen asserted that the allegations contained within these Texas state suits were encompassed within this MDL, and that the court should therefore enjoin these state suits to protect its jurisdiction. The court agreed, and enjoined the Texas firms from proceeding in these cases, pursuant to the

All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act, 28 U.S.C. § 2283. In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, 397 F. Supp. 2d 957 (N.D. Ill. 2005). The Seventh Circuit vacated this injunction, however, stating "[a]lthough an injunction prohibiting discovery could be appropriate in some circumstances, the broad injunction prohibiting all litigation by the Texas law firms is not supported by the record in this case." In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, No. 05-4268, slip op. at 4 (7th Cir. Dec. 13, 2005).

On January 4, 2006, the parties filed a Stipulation Concerning Priority of Pending Dispositive Motions. This Stipulation, submitted at the court's request, indicated that the parties agreed that the court should resolve the pending dispositive motions in the following order: (1) Motion to Dismiss Plaintiffs' State-Law Claims on Federal Preemption, (2) Motion to Dismiss, (3) Defendant Ocwen Financial Corporation's Motion to Dismiss for Lack of Personal Jurisdiction. The court then asked the parties to submit further briefing on the federal preemption issue in light of the Seventh Circuit's decision to allow the Texas state court actions to proceed. The parties have completed their briefing on this issue, and the question of whether Plaintiffs' state law claims are preempted by federal law is ripe for ruling.

## II. DISCUSSION

### A. Standard of Decision

The doctrine of preemption is grounded in the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitutions or Laws of any State to the contrary notwithstanding." U.S. CONST. art VI, cl. 2. Preemption is "[d]erivative of this constitutional text," and "operates

3

to prevent the enforcement of state laws that conflict with federal laws or regulations." Fifth Third Bank v. CSX Corporation, 415 F.3d 741, 745 (7th Cir. 2005). There are three ways in which a federal law can preempt a state law: express preemption, field preemption, and conflict preemption. Andrew T. Reardon, *An Examination of Recent Preemption Issues in Banking Law*, 90 IOWA L. REV. 347, 356 (2004); see also Time Warner Cable v. Doyle, 66 F.3d 867, 875 (7th Cir. 1995).

A state law is expressly preempted "where Congress specifically states an intention to supplant state law with federal legislation." Reardon, supra, at 356; see also Doyle, 66 F.3d at 875. For example, the federal Employee Retirement Income Security Act ("ERISA") states, "The provisions of [this law] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by this law]." 29 U.S.C. § 1144(a). Field preemption may occur "when Congress manifests its intent to occupy an entire field of regulation." Doyle, 66 F.3d at 875. Conflict preemption may arise when it becomes "impossible to comply with both federal and state regulations, when state law presents an obstacle to the accomplishment of the purposes and objectives of Congress, or when state law prevents implementation of federal law." Reardon, supra, at 358-59; see also Cannon v. Edgar, 33 F.3d 880 (7th Cir. 1994) (finding that the Illinois Burial Rights Act was in irreconcilable conflict with, and therefore preempted by, the National Labor Relations Act). Preemption may occur when Congress itself passes legislation, or "when a federal agency acts within the scope of its congressionally delegated authority to preempt state law." Lynnbrook Farms v. Smithkline Beecham Corp., 79 F.3d 620, 623 (7th Cir. 1996); see also American Deposit Corp. v. Schacht, 887 F. Supp. 1066, 1080 (N.D. Ill. 1995).

In determining whether preemption has occurred, courts must carefully consider whether it was truly Congress' intent for a particular federal law to override a state law. "'[B]ecause the States are independent sovereigns in our federal system,' there has long been a presumption that 'Congress does not cavalierly pre-empt state-law causes of action.'" Federation of Adver. Indus. Representatives, Inc. v. City of Chicago, 189 F.3d 633, 637 (7th Cir. 1999) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Courts are to presume that Congress does not intend to override state law, unless Congress has distinctly indicated that preemption is its objective.

> If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supercede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed.

New York State Dep't of Soc. Servs. v. Dublino, 413 U.S. 405, 413 (1973) (quoting Schwartz v. Texas, 344 U.S. 199, 202-03 (1952)).

The intent of Congress therefore "controls on issues of preemption." Chambers v. Osteonics Corp, 109 F.3d 1243, 1246 (7th Cir. 1997); see also Pharm. Research & Mfrs. of America v. Walsh, 538 U.S. 644, 684 (2003) ("Our touchstone is Congress' intent.") (O'Connor, J., concurring in part and dissenting in part). In determining Congress' intent, courts may look to "[t]he nature of the power exerted by Congress, the object sought to be obtained, and the character of the obligations imposed by the law . . . ." Id. at 684-85 (quoting Hines v. Davidowitz, 312 U.S. 52, 61 (1941)).

**B. Ocwen's Motion to Dismiss on Federal Preemption Grounds**

Ocwen asserts that since Congress passed the Home Owners' Loan Act, 12 U.S.C. § 1461 *et seq.*, ("HOLA"), federal laws and regulations have preempted state law that purports to

5

regulate the banking industry. Through HOLA, Ocwen asserts, Congress delegated to the federal Office of Thrift Supervision ("OTS") the authority to regulate the lending-related practices of federal savings associations. Ocwen cites 12 C.F.R. § 560.2(a) to support its proposition that OTS occupies the entire field of lending regulation for federal savings associations. Moreover, Ocwen asserts, specific OTS regulations expressly preempt Plaintiffs' claims. OTS regulations implementing HOLA, Ocwen asserts, therefore act as a bar to Plaintiffs' state law claims through both express and field preemption.

It is clear that in some cases, federal banking regulations have displaced specific state statutes designed to regulate banking activity. For example, in The Bank of America v. City and County of San Francisco, the Ninth Circuit determined that federal law preempted local ordinances prohibiting federally chartered banks from charging ATM fees to non-depositors. 309 F.3d 551 (9th Cir. 2002). The Ninth Circuit held "that the HOLA and OTS regulations together preempt conflicting state limitations on the authority of federal savings associations to collect fees for the provision of deposit and lending-related electronic services and that prohibition of ATM fees by the Ordinances is therefore invalid under the Supremacy Clause of the Constitution." Id. at 561. In addition, a Southern District of New York court found "that the New York escrow account interest statutes are preempted because the HOLA Regulations occupy the entire field of governing federal loan associations." Flagg v. Yonkers S & L Ass'n, 307 F. Supp. 2d 565, 574-75 (S.D. N.Y. 2004) (aff'd, 396 F.3d 178 (2nd Cir. 2005)).

Although some state statutes have been preempted by HOLA and OTS regulations, as the above examples illustrate, courts should be cautious in finding preemption in areas of consumer protection. "[C]ourts must start with the assumption that the historic police powers of the States

are not to be superceded by federal law unless that is the clear and manifest purpose of Congress ... One historic police power is consumer protection, which is an area traditionally regulated by the states." SPGGC, Inc. v. Blumenthal, 408 F. Supp. 2d 87, 92 (D.Conn. 2006) (internal marks and citations omitted) (citing Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 135 (1963); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). The question put to the court in this case therefore becomes whether Congress, in passing HOLA, clearly intended to preempt state law claims like those brought by the Plaintiffs, which include numerous consumer protection counts, in addition to common law counts alleging that Defendants engaged in deception and fraud.

In order to answer this question, the court first briefly examines the legislative history and intent behind HOLA. This statute, "a product of the Great Depression of the 1930's, was intended 'to provide emergency relief with respect to home mortgage indebtedness' at a time when as many as half of all home loans in the country were in default." Fid. Fed. Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 159 (1982) (quoting H.R. Conf. Rep. No. 210, 73rd Cong., 1st Sess., 1 (1933)). Economic conditions during the Depression had caused the demise of so many home-loan institutions that "more than half the counties in the country, containing almost one-fifth of the total population, were without home-financing institutions." Id. at 159-60. Congress therefore enacted HOLA as a means to remedy this situation. HOLA

> provided for the creation of a system of federal savings and loan associations, which would be regulated by the [Federal Home Loan Bank Board] so as to ensure their vitality as 'permanent associations to promote the thrift of the people in a cooperative manner, to finance their homes and the homes of their neighbors.'

Id. at 160 (quoting S. Rep. No. 91, 73rd Cong., 1st Sess., 2 (1933)). Congress then gave the

Federal Home Loan Bank Board ("FHLBB") "plenary authority to issue regulations governing federal savings and loans." Id. The De La Cuesta court noted that "Congress expressly contemplated, and approved, the [FHLBB's] promulgation of regulations superceding state law." Id. at 162. The FHLBB was given this power "expressly for the purpose of creating and regulating federal savings and loans so as to ensure that they would remain financially sound institutions able to supply financing for home construction and purchase." Id. at 168.[2]

Under the authority vested in it by Congress, the FHLBB and the OTS have "governed the 'powers and operations of every federal savings and loan association from its cradle to its corporate grave.'" San Francisco, 309 F.3d at 558 (quoting De La Cuesta, 458 U.S. at 145). This does not mean, however, that states are entirely forbidden from regulating banks. "State regulation of banking is permissible when it 'does not prevent or significantly interfere with the national bank's exercise of its powers.'" Id. at 558-59 (quoting Barnett Bank v. Nelson, 517 U.S. 25, 33 (1996)). The San Francisco court determined that "states retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law." Id. at 559. This reasoning is in line with the statutory language of 12 C.F.R. § 560.2(c), which provides that state laws pertaining to, *inter alia*, contract, commercial, and tort law are not preempted by OTS regulations. This reasoning is also in line with Justice O'Connor's concurrence in De La Cuesta, "Nothing in the language of . . . HOLA . . . suggests that Congress intended to permit the [OTS] to displace local laws . . . not directly related to savings and loan practices." 458 U.S. at 172.

---

[2] In 1989, Congress abolished the FHLBB and transferred its regulatory authority and functions to the Office of Thrift Supervision ("OTS"). Westfed Holdings, Inc. v. United States, 407 F.3d 1352, 1357 (Fed. Cir. 2005).

8

In their Consolidated Complaint, Plaintiffs bring the following common law counts: fraudulent concealment, unjust enrichment, breach of contract, breach of the covenant of good faith and fair dealing, conversion, negligence, misrepresentation, defamation, and fraud and deceit. 12 C.F.R. § 560.2(c) provides: "State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations . . . : (1) Contract and commercial law . . . , (4) Tort law." The court finds that these common law counts are not preempted by HOLA or OTS regulations. Allowing Plaintiffs to proceed with these claims will in no way "prevent or significantly interfere with [any] national bank's exercise of its powers.'" See San Francisco, 309 F.3d at 558-59 (quoting Barnett Bank v. Nelson, 517 U.S. 25, 33 (1996)).

Plaintiffs also bring numerous counts alleging violations of California, Connecticut, New Mexico, Illinois, and Pennsylvania consumer protection statutes. Again, 12 C.F.R. §560.2(c) expressly provides that state commercial laws are not preempted by federal law, as long as the state commercial laws only incidentally affect the lending operations of federal savings associations. These state statutes are intended to offer consumers protection from deceptive, fraudulent, or unfair business and debt collection practices. According to OTS' own interpretation of 12 C.F.R. § 560.2, statutes of this nature do not directly affect the ability of any national bank to exercise its powers. Op. of OTS Chief Counsel, Dec. 24. 1996 ("because federal thrifts are presumed to interact with their borrowers in a truthful manner, [state] prohibition[s] on deception should have no measurable impact on lending operations."). These state statutes are thus not preempted by federal law or regulation. See De La Cuesta, 458 U.S. at 172.

The court notes that HOLA was designed to provide for a uniform set of federal regulations, promulgated by the FHLBB and OTS, that would ensure the vitality and permanence of federal savings associations. Id. at 160. The intention of Congress in implementing this statute, and creating these federal agencies, was to assure that all Americans would have access to trustworthy and stable financial institutions to facilitate the purchase of homes. Id. at 159-60. Nothing in the court's decision today is contrary to the intent of Congress in promulgating this statute. See id. at 172 (O'Connor, J.)

In closing, the court notes that the Seventh Circuit has vacated this court's injunctive order in this case, allowing Texas law firms to proceed with parallel litigation in the Texas state court system. In its Order vacating the injunction, the Seventh Circuit said nothing about whether these parallel state court actions were preempted by federal laws or regulations. This court is cautious of reading too much into the Seventh Circuit's decision to bypass the preemption issue. The court does point out, however, that if it were clear that the parallel Texas state court litigation, and by implication, this MDL, were preempted, the Seventh Circuit would have said so.

## III. CONCLUSION

For the foregoing reasons, Class Defendants' Joint Motion to Dismiss Plaintiffs' State-Law Claims on Federal Preemption Grounds, based on HOLA and OTS regulations, is denied. IT IS SO ORDERED.

Enter:

_Charles R. Norgle_

CHARLES RONALD NORGLE, District Judge
United States District Court

Dated: March 22, 2006