## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| In re Ocwen Federal Bank FSB Mortgage Servicing Litigation | MDL No. 1604 <br><br> **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiffs, by their attorneys, hereby consolidate the complaints filed in the following actions:

*Patricia Antoine, et al. v. Ocwen Financial Services, Inc., et al.*; C-03-5503 (MHP), U.S. District Court for the Northern District of California;

*Allie M. Maddox, et al. v. Ocwen Federal Bank, FSB, et al.*; CV03-9515 RSWL; U.S. District Court for the Central District of California;

*William Hearn v. Ocwen Financial Services, Inc., et al.*; C.A. No. 2:04-291, U.S. District Court of the Eastern District of California;

*Lula M. Jackson, et al. v. Ocwen Federal Bank, FSB, et al.*; C03-0743 (MJJ), U.S. District Court for the Northern District of California;

*Jeanette E. Martinez, et al. v. Ocwen Federal Savings Bank, FSB, et al.*, CIV-04-296 JP/RLP, U.S. District Court for the District of New Mexico;

*Michele McAuliffe and Ryan E. McAuliffe v. US Bank, N.A., et al.*; 03C 1103, U.S. District Court for the Northern District of Illinois;

*George McDonald, et al. v. Ocwen Financial Corporation, et al.*; C 04 0907 PJH, U.S. District Court for the Northern District of California;

*Delores B. Moore v. Ocwen Financial Corporation, et al.*, Civ. Action 04-2612, U.S. District Court for the Eastern District of Pennsylvania;

*Arleatha L. Robinson v. Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP, et al.*; C03-1302 (MJJ), U.S. District Court for the Northern District of California;

*Richard A. Roeh and Margaret M. Roeh v. Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP, et al.*; 03-CV-3122, U.S. District Court for the Northern District of Illinois;

*William A. Soto and Marlene Soto v. Ocwen Federal Bank, FSB, et al.*; 02-C-06818; U.S. District Court for the Northern District of Illinois;

*Geneva Spires, et al. v. Ocwen Financial Services, Inc., et al.*; C03-5600 (PJH); U.S. District Court for the Northern District of California;

*Paul Stalbaum and Bonnie Stalbaum v. Codilis, Stawiarski, Morris, Schneider & Prior, LLP, et al.*; 03-CV-7642, U.S. District Court for the Northern District of Illinois;

*Ralph Carreon, Jr., and Irma A. Carreon, et al. v. Ocwen Federal Savings Bank, FSB*, Bankr. No. 03-50035-LMC-13, Adv. No. 03-5151-LMC, U.S. Bankruptcy Court for the Western District of Texas;

*Timothy Napier, et al. v. Ocwen Federal Bank FSB, et al.*; CS-03-0174-EFS, U.S. District Court for the Eastern District of Washington;

*Albert Telfer v. Cal-Western Reconveyance Corp.*; EDCV 04 1475 VAP, U.S. District Court for the Central District of California;

*Albert Telfer v. Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP, et al.*; CVSS 118823, EDCV 05 138 VAP, U.S. District Court for the Central District of California; and

*Thomas B. Doherty and Elvie Doherty v. Ocwen Federal Bank, FSB*; 04-Cv-04880-MJD-JGL, U.S. District Court for the District of Minnesota.

By this consolidation, the allegations in each of these complaints are intended to be preserved as if reasserted and alleged herein. Plaintiffs allege the following upon information

and belief based, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

## INTRODUCTION

1.    Plaintiffs bring this class action on behalf of themselves, and a nationwide class of similarly-situated individuals (the "Class") as described in the paragraphs set forth herein.

2.    This case involves the actions of Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (formerly Ocwen Federal Bank, FSB) (collectively "Ocwen") and their affiliates and agents. Ocwen services residential mortgage loans.

3.    As alleged herein, Defendants have engaged in a nationwide scheme of illegal, unfair, unlawful, and deceptive business practices that violate both federal and state law in the servicing of home-secured loan transactions and in the provision of certain related services, including debt collection and foreclosure services. This scheme is carried out by means of a centrally-controlled set of policies and practices and is implemented with form documents, form notices and uniform accounting mechanisms.

4.    Defendants routinely seek to collect, and do collect, various improper fees, costs and charges, including "recoverable breach fees," unnecessary hazard insurance premiums, attorneys' fees, unexpended foreclosure-related fees and costs, and other fees that are either not legally due under the mortgage contract or applicable law, or that are in excess of amounts legally due. Together, these fees and costs are known as "improper charges."

5.    The Ocwen Defendants also mishandle borrowers' mortgage payments and fail to timely or properly credit payments received, resulting in late charges, delinquencies or default.

6.    It is also Ocwen's practice to force place hazard insurance covering properties securing loans serviced by Ocwen, including in instances where the borrower has an existing policy of hazard insurance in force, and then to charge borrowers unnecessary and excessive insurance premiums. The improper insurance charges often result in forcing the

consumers into default under the terms of their mortgages, resulting in further improper and unauthorized fees and charges to their escrow accounts, which are controlled by Defendants.

7.     Ocwen routinely treats borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or applicable law.

8.     Ocwen's servicing and collection practices frequently contribute to or cause Ocwen's borrowers to seek relief under the bankruptcy laws in order to prevent foreclosure or to preserve assets. Ocwen then secretly places various illegal bankruptcy-related costs and bankruptcy-related fees on borrowers' accounts and seeks to collect such fees during or after bankruptcy. These bankruptcy fees and costs are not submitted to or approved by the bankruptcy court as required by law.

9.     Plaintiffs allege that Defendants have engaged in a regular pattern of violations of the following federal laws: the Real Estate Settlement Procedures Act, as amended, 12, U.S.C. §§ 2601, *et seq.* ("RESPA"), with respect to responding to requests from borrowers for account information, provision of required notices, and application of payments; and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), with respect to unlawful collection practices, collecting or seeking to collect amounts not legally due and owing, failing to provide required disclosures in collection letters, and harassing borrowers.

10.     Plaintiffs also allege that Defendants' practices are misleading, deceptive and/or unfair under state law including under, without limitation, California's Unfair Business Practices Act, Bus.& Prof. Code §§ 17200 *et seq.*, the Illinois Consumer Fraud Act, 815 ILCS 505/2, the Minnesota Deceptive Trade Practices Act, §§ 58.13, 325 D.44 and 325 F.69, the New Mexico Unfair Trade Practices Act, N.M.S.A. 1978, §§ 57-12-1 *et seq.*, the Pennsylvania Consumer Protection Law, 73 P.S. §§ 202-1, *et seq.*, and the Washington Consumer Protection Act, RCW 19.86.01 *et seq.*

11.    With respect to Class Members who have filed bankruptcy, Plaintiffs allege that the Defendants' practices also violate federal bankruptcy law including 11 U.S.C. §§ 362(h); 506(b); 524(a)(2) and Fed. R. Bankr. P. 2016(b).  Said practices are actionable.

12.    The practices described herein also violate contract law and other common laws of the states in which Defendants do business.

13.    Finally, Plaintiffs seek injunctive relief to prevent recurrence of the challenged conduct, and to assure uniform standards of future servicing of loans and equitable relief and damages for themselves and the Class generally, including restitution and disgorgement of funds obtained by Defendants in violation of state and federal law.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, and 15 U.S.C. §§ 1692k, 2614, 1640(e).  The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and pursuant to the transfer order of the Judicial Panel on Multidistrict Litigation.

## PARTIES

**Plaintiffs**

16.    Individual and Representative Plaintiff Patricia Antoine is a resident of Oakland, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

17.    Individual and Representative Plaintiff Jon De Kerguelen is a resident of San Diego, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

18.    Individual and Representative Plaintiff Rosalind DeKett is a resident of Los Gatos, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

19.     Individual and Representative Plaintiffs Allie M. Maddox and Jerry W. Maddox are former residents of Bend, Oregon, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action. Currently, they are residents of Bakersfield, California.

20.     Individual and Representative Plaintiff Charles Emeka Amamgbo is a resident of Oakland, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

21.     Individual and Representative Plaintiff Cyd Bowman is a resident of Phoenix, Arizona, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

22.     Individual and Representative Plaintiff Lula M. Jackson is a resident of Oakland, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

23.     Individual and Representative Plaintiff Garry L. Youtsey is a resident of Pleasanton, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

24.     Individual and Representative Plaintiff Rosalie Jaramillo is a resident of Albuquerque, New Mexico, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

25.     Individual and Representative Plaintiff Marylin Snider is a resident of Albuquerque, New Mexico, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

26.     Individual and Representative Plaintiffs Michele McAuliffe and Ryan E. McAuliffe are residents of Elmwood Park, Illinois, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

27.    Individual and Representative Plaintiff George McDonald is a resident of Inglewood, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

28.    Individual and Representative Plaintiffs Richard A. Roeh and Margaret M. Roeh are residents of Burbank, Illinois, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

29.    Individual and Representative Plaintiff Delores B. Moore is a resident of Elkins Park, Pennsylvania, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

30.    Individual and Representative Plaintiffs William A. Soto and Marlene Soto are residents of Chicago, Illinois, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

31.    Individual and Representative Plaintiff Geneva Spires is a resident of San Francisco, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

32.    Individual and Representative Plaintiffs Paul Stalbaum and Bonnie Stalbaum are residents of Valparaiso, Indiana, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

33.    Individual and Representative Plaintiffs Ralph Carreon, Jr. and Irma A. Carreon are residents of San Antonio, Texas, who filed bankruptcy under chapter 13 of the Bankruptcy Code and whose loan was serviced by Ocwen before and during their bankruptcy. Their bankruptcy case is ongoing.

34.    Individual and Representative Plaintiffs Michael Owen Tebbs and Lori Kay Tebbs are residents of San Antonio, Texas who filed bankruptcy under chapter 13 of the Bankruptcy Code and whose loan was serviced by Ocwen before, during and after their bankruptcy.

35. Individual and Representative Plaintiffs Timothy Napier and Lisa Napier are residents of Stevens County, Washington, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

36. Individual and Representative Plaintiffs Richard A. Standley and Linda C. Standley are residents of Pend Oreille County, Washington, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

37. Individual and Representative Plaintiffs Duane K. Tomson and Kim M. Tomson are residents of Spokane County, Washington, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

38. Individual and Representative Plaintiff Albert Telfer is a resident of Colton, California, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

39. Individual and Representative Plaintiffs Thomas B. Doherty and Elvie Doherty are residents of Minnesota, whose home-secured loan was serviced by Ocwen during the period covered by this consolidated action.

**Defendants**

40. Defendant Ocwen Financial Corporation is a publicly-held Florida financial services company that is engaged in the servicing of residential mortgage loans.

41. Defendant Ocwen Loan Servicing, LLC is a primary subsidiary of Ocwen Financial Corporation, and is based in West Palm Beach, Florida.

42. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC are referred to herein collectively as "Ocwen."

43. Defendant Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP ("Moss, Codilis") is a limited liability partnership with its principal office at 9200 E. Mineral Avenue, Suite 120, Englewood, CO 80112. Moss, Codilis has acted as a debt collector for Ocwen. Upon information and belief, the Moss, Codilis principals have owned and/or controlled the other Defendants' debt collection firms that are part of the scheme.

44. Defendant Cal-Western Reconveyance Corporation ("Cal-Western") is a corporation that does business throughout the State of California with its principal place of business in El Cajon, California. Cal -Western has acted as a debt collector for Ocwen.

**Agency/Joint Venture**

45. At all times herein mentioned, Defendants, both individually and collectively, and affiliates not herein named, are and were agents or joint venturers of each of the other Defendants, and in doing the acts alleged herein were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

**Aiding and Abetting**

46. Defendants, and each of the lending subsidiaries, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**Conspiracy**

47. Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, *inter alia*, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct,

necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

48.    Plaintiffs are informed and believe that the above-described conspiracy is ongoing, making it pointless for Plaintiffs to allege when the last overt act of the conspiracy occurred.

## FACTUAL BACKGROUND

49.    Ocwen currently services single-family residential loans, an enterprise worth more than $30 billion. As described on its website, Ocwen claims that it has "superior servicing capabilities" and focuses on "what empowers our customers," allowing "servicing customers [to] reap the benefits of Ocwen's comprehensive approach to adding value to distressed loans."

50.    Contrary to its representations, when Ocwen takes over loans, it routinely breaches the loan agreements by, among other things, ignoring grace periods; misapplying and failing to apply payments; and charging improper late fees, prepayment penalties, and insurance premiums.

51.    Ocwen, acting in concert with the other Defendants, also engages in a uniform pattern and practice of unfair and overly-aggressive servicing that results in the assessment of unwarranted and unfair fees against consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.

52.    The scheme implemented by Defendants is designed to defraud consumers and enrich Defendants.

### Ocwen Has Engaged In A Pattern And Practice Of Assessing Unfair, Excessive, And/Or Unlawful Late Charges and Fees for Use of Its EZ Pay System

53.    Ocwen is in the business of servicing loans initiated through other mortgage lenders. Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2605(d); reg. X, 24 C.F.R. § 3500.21(d)(5), loan servicers such as Ocwen can not impose late fees or treat payments as late during the 60-day grace period following the effective date of loan transfer if a consumer sends a payment to his or her old servicer. In addition, the loans serviced by Ocwen have a payment due date and a payment grace period after which a loan is due, but before which a late fee may not be assessed.

54. Ocwen has engaged in a pattern and practice of improperly charging borrowers late charges for payments that either are not late or are made within the payment grace period, or are late as a direct result of Ocwen's failure to provide timely payment information to borrowers upon service being transferred to Ocwen. In addition, Ocwen has engaged in a pattern and practice of failing to credit payments within the 60-day grace period created by RESPA for newly-transferred loans, thus improperly assessing late fees and otherwise treating timely payments as late.

55. Ocwen has failed to timely post payments received, and has failed to correct this problem even when borrowers have brought it to Ocwen's attention. Instead, Ocwen has assessed borrowers late charges on timely payments.

56. Ocwen has increased the monthly amount due on borrowers' loans without cause and without notice. When borrowers bring this to Ocwen's attention Ocwen has failed to sufficiently explain the reason why the monthly amount has changed in violation of borrowers' original note terms.

57. In addition, Ocwen routinely pressures borrowers to remit payments through an "EZ Pay" system. Borrowers are charged for the use of this system, and Ocwen keeps a portion of the charge, without revealing this fact to borrowers.

### Defendants Have Improperly Initiated Default And Foreclosure Proceedings And Engaged In Improper Debt Collection Activities

58. Ocwen represents on its website that its "specialized expertise and advanced technology are applied hand in hand so clients can enjoy lower costs, faster turnarounds and higher recovery values." However, upon information and belief, Ocwen's

internal procedures are such that if a payment is late (according to Ocwen's own faulty record-keeping), even if the payment is within the grace period prescribed by the loan contract or in accordance with Section 6 of the Real Estate Settlement Procedures Act, the loan is prematurely referred to collections, and reported to national credit reporting agencies.

59. Defendants have also engaged in a pattern and practice of charging unwarranted attorneys' fees for properties it has erroneously categorized as being in default. Defendants use common and uniform tactics to obtain these monies, including erroneously assessing fees on invoices directly or on demand letters from Defendants for unwarranted attorneys' fees.

60. Defendants are debt collectors within the meaning of the FDCPA and applicable state laws.

### Ocwen Has Routinely Misapplied Customer Payments

61. In addition to the unwarranted late fees and the fees in connection with alleged defaults, Ocwen has routinely misapplied customer payments, including placing them into "suspense accounts."

62. In practice, the creation of a suspense account has allowed Ocwen to divert customer payments away from mortgage loan payments. Therefore, customers remain subject to additional fees and related problems on their loan servicing because their payments have been misapplied.

### Ocwen Has Engaged In A Pattern And Practice Of Assessing Unfair, Excessive, And/Or Unlawful Broker Price Opinions (BPO's), Property Inspection Fees and Recoverable Breach Fees

63. Ocwen routinely imposes and collects charges for property inspections, appraisals, and broker price opinions ("BPOs") in excess of the cost of those items or when no such service has actually been performed. Ocwen routinely demands and collects "Recoverable Breach Fees" from borrowers that are not authorized in borrowers' notes and mortgages and as to which Ocwen provides no explanation for the fees' basis.

### Ocwen Has Forced Hazard Insurance on Properties Already Known to be Insured

64.     In addition to the unwarranted fees and improper foreclosures, Ocwen attempts to force customers to purchase insurance for properties that are already insured. This practice allows Ocwen to charge customers expensive and unwarranted insurance premiums and related charges.

### Ocwen Has Engaged In a Pattern and Practice of Assessing Fees That Are Not Permitted By the Bankruptcy Code.

65.     Ocwen routinely imposes and collects bankruptcy-related fees and costs in amounts that exceed the amount allowed to it by court orders of various Bankruptcy Courts.

66.     Ocwen routinely imposes and collects bankruptcy-related fees and costs in amounts for which approval by the Bankruptcy Court is a prerequisite without obtaining the required approval.

67.     Ocwen routinely imposes and collects bankruptcy-related fees and costs in violation of specific prohibitions in the Bankruptcy Code including the automatic stay, 11 U.S.C. § 362(a), the discharge injunction, 11 U.S.C. § 524(a)(2) and requirements for including said costs in secured claims, 11 U.S.C. 506(b) and Fed. R. Civ. P. 2016(b).

68.     Ocwen's bankruptcy-related conduct constitutes breach of contract, unfair trade practices and is also actionable under 11 U.S.C. §§ 362(h) and 105.

### CLAIMS OF NAMED PLAINTIFFS

69.     Plaintiff Patricia Antoine obtained a home-secured loan from New Century Mortgage Corporation in March 2000. Subsequently, on January 1, 2001, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff Antoine's loan. Defendants have also force-placed hazard insurance covering Plaintiff Antoine's property, despite her pre-existing policy of hazard insurance.

70.     Plaintiff Rosalind DeKett obtained a home-secured loan from Green Point Mortgage on April 8, 2002. Subsequently, on November 1, 2002, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff DeKett's

loan. Defendants have also misapplied Plaintiff DeKett's payments. Defendants have force-placed hazard insurance covering Plaintiff DeKett's property, despite her pre-existing policy of hazard insurance. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiff DeKett.

71. Plaintiff Jon DeKerguelen obtained a home-secured loan from People's Choice Home Loan, Inc. on May 5, 2002. Subsequently, on August 1, 2002, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff DeKerguelen's loan. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiff DeKerguelen.

72. Plaintiffs Allie M. Maddox and Jerry W. Maddox obtained a home-secured loan from Homecoming Financial Network, Inc. on or about February 17, 1998. Subsequently, during the relevant time period, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Allie and Jerry Maddox's loan. Defendants have also force-placed hazard insurance covering Plaintiffs Allie and Jerry Maddox's property, despite their pre-existing policy of hazard insurance. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiffs Allie and Jerry Maddox.

73. Plaintiff Charles Emeka Amamgbo obtained a home-secured loan from Ocwen on or about March 2001. During the relevant time period, Defendants have assessed improper charges relating to Plaintiff Charles Amamgbo's loan. Defendants have also force-placed hazard insurance covering Plaintiff Charles Amamgbo's property, despite his pre-existing policy of hazard insurance. Defendants have also engaged in improper debt collection activities with respect to Plaintiff Charles Amamgbo. Additionally, Defendants have also misapplied Plaintiff Charles Amamgbo's payments. Defendants have also improperly placed liens on property of Plaintiff Charles Amamgbo for alleged late fees and costs despite receiving full payment for such alleged late fees and costs.

74.     Plaintiff Cyd Bowman obtained a home-secured loan from the Department of Housing and Urban Development. Subsequently, in 1996, the loan was assigned, sold or transferred to Ocwen. During the relevant time period, Defendants have assessed improper charges relating to Plaintiff Bowman's loan. Defendants have also force-placed hazard insurance covering Plaintiff Bowman's property, despite her pre-existing policy of hazard insurance. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Ms. Bowman's loan.

75.     Plaintiff Lula M. Jackson obtained home-secured loans from Ocwen in February 1998 and January 1999. During the relevant time period, Defendants have assessed improper charges relating to Plaintiff Jackson's loan, including improper collections charges.

76.     Plaintiff Garry L. Youtsey obtained a home-secured loan from New Century Mortgage Corporation in February 2001. Subsequently, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff Youtsey's loan.

77.     Plaintiff Rosalie Jaramillo obtained a home-secured loan from Charter Bank in 1978. Subsequently, the loan was assigned, sold or transferred to Ocwen. During the relevant time period, Defendants have assessed improper charges relating to Plaintiff Jaramillo's loan. Defendants have also misapplied Plaintiff Jaramillo's payments. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiff Jaramillo's loan.

78.     Plaintiff Marylin Snider obtained a home-secured loan from Home Mortgage Company. Subsequently, the loan was assigned, sold or transferred to Ocwen. During the relevant time period, Defendants have assessed improper charges relating to Plaintiff Snider's loan. Defendants have also force-placed hazard insurance covering Plaintiff Snider's property, despite her pre-existing policy of hazard insurance. Defendants have also misapplied Plaintiff Snider's payments. Defendants have also improperly initiated default and/or

foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiff Snider's loan.

79.     Plaintiffs Michele McAuliffe and Ryan E. McAuliffe obtained a home-secured loan from New Century Mortgage Corporation in February 2002. Subsequently, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Michele and Ryan McAuliffe's loan. Defendants have also force-placed hazard insurance covering Plaintiffs' property, despite their pre-existing policy of hazard insurance. Defendants have also misapplied Plaintiffs Michele and Ryan McAuliffe's payments. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiffs Michele and Ryan McAuliffe's loan.

80.     Plaintiff George McDonald obtained a home-secured loan from BNC Mortgage, Inc. on or around May 30, 2002. Subsequently, on November 1, 2002, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff McDonald's loan. Defendants have also force-placed hazard insurance covering Plaintiff McDonald' property, despite his pre-existing policy of hazard insurance. Defendants have misapplied Plaintiff McDonald's payments.

81.     Plaintiff Delores B. Moore obtained a home-secured loan from New Century Mortgage Corporation on May 16, 2002. Subsequently, within the last three years, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiff Moore's loan. Defendants have also engaged in improper debt collection activities with respect to Plaintiff Moore's loan.

82.     Plaintiffs Richard A. Roeh and Margaret M. Roeh obtained a home-secured loan from Fidelity Mortgages, Inc. in 1998. Subsequently, on or around March 11, 2003, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Richard and Margaret Roeh's loan. Defendants have also engaged in improper debt collection activities with respect to Plaintiffs Richard and Margaret Roeh's loan.

MDL NO. 1604
AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

83.     Plaintiffs William A. Soto and Marlene Soto obtained a home-secured loan from Smith Rothchild Financial on August 5, 1997. Subsequently, in 2001, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs William and Marlene Soto's loan. Defendants have also improperly initiated default and/or foreclosure proceedings and engaged in improper debt collection activities with respect to Plaintiffs William and Marlene Soto's loan.

84.     Plaintiff Geneva Spires obtained a home-secured loan from First Alliance Mortgage Company. Subsequently, the loan was assigned, sold or transferred to Ocwen, and has been serviced by Ocwen during the relevant time period. Defendants have assessed improper charges relating to Plaintiff Spires' loan. Defendants have also force-placed hazard insurance covering Plaintiff Spire's property, despite her pre-existing policy of hazard insurance.

85.     Plaintiffs Paul Stalbaum and Bonnie Stalbaum obtained a home-secured loan from Pinnacle Direct Funding Corporation on March 30, 2001. Subsequently, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Paul and Bonnie Stalbaum's loan. Defendants have also engaged in improper debt collection activities with respect to Plaintiffs Paul and Bonnie Stalbaum's loan.

86.     Plaintiffs Ralph Carreon, Jr. and Irma A. Carreon obtained a home-secured loan, now held and/or serviced by Ocwen, in which Ocwen charged them bankruptcy-related fees and costs in violation of the Bankruptcy laws, various bankruptcy court orders, applicable contract and other laws.

87.     Plaintiffs Michael Owen Tebbs and Lori Kay Tebbs obtained a home-secured loan, now held and/or serviced by Ocwen, in which Ocwen charged them bankruptcy-related fees and costs in violation of the Bankruptcy laws and applicable contract and other laws.

88.     Plaintiffs Timothy Napier and Lisa Napier obtained a home-secured loan from Southern Pacific Funding on September 9, 1998. Subsequently, on or about September 21, 2003, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Timothy and Lisa Napier's loan and have improperly initiated

default and/or foreclosure proceedings. Defendants have also engaged in improper debt collection activities with respect to Plaintiffs Timothy and Lisa Napier's loan.

89.     Plaintiffs Richard A. Standley and Linda C. Standley obtained a home-secured loan from MetWest Mortgage Services Co. on August 12, 1998. Subsequently, on or about June 8, 2001, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Richard and Linda Standley's loan and have improperly initiated default and/or foreclosure proceedings. Defendants have also engaged in improper debt collection activities with respect to Plaintiffs Richard and Linda Standley's loan.

90.     Plaintiffs Duane K. Tomson and Kim M. Tomson obtained a home-secured loan from BNC Mortgage, Inc. on October 23, 1997. Subsequently, on or about October 28, 1998, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed improper charges relating to Plaintiffs Duane and Kim Tomson's loan and have improperly initiated default and/or foreclosure proceedings. Defendants have also engaged in improper debt collection activities with respect to Plaintiffs Duane and Kim Tomson's loan.

91.     Plaintiff Albert Telfer obtained a home-secured loan from Accredited Home Lenders in or around 2002. Subsequently, the loan was assigned, sold or transferred to Ocwen. Defendants have improperly initiated default and/or foreclosure proceedings and have engaged in improper debt collection activities with respect to Plaintiff Telfer.

92.     Plaintiffs Thomas B. Doherty and Elvie Doherty obtained a home-secured loan from Finance America on or around May 21, 2002. Subsequently, the loan was assigned, sold or transferred to Ocwen. Defendants have assessed prepayment penalty charges relating to Plaintiffs Thomas and Elvie Doherty's loan.

## CLASS ACTION ALLEGATIONS

93.     Plaintiffs bring this action on behalf of themselves and all persons nationwide ("the Class") who, on or after June 5, 1998, (a) incurred or were assessed any of the improper charges that are the subject of this consolidated complaint; (b) have had insurance

force-placed on their homes; or (c) have had residential mortgage loans serviced by Ocwen whose loans were in default or treated as being in default by Ocwen ("the Class").

94.     Plaintiffs seek certification of the Class under Federal Rules of Civil Procedure 23(a) and 23(b)(1), (2), and (3).

95.     Excluded from the Class are: (a) the Defendants and any of their corporate parents, subsidiaries, affiliates, partners, officers, directors, predecessors, or successors; (b) any entity in which any Defendant or other excluded entity has a controlling interest; (c) any judge or judicial official assigned to this matter and his or her immediate family; and (d) the legal representatives, successors or assigns of any such excluded persons or entities.

96.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Ocwen and its agents.

97.     Common questions of fact and law exist as to all members of the Class. Among the questions of law and fact common to the Class are:

a.     Whether the Defendants have engaged in a common course of deceptive, misleading, or unfair conduct, including the acts and practices identified herein in the servicing of loans collateralized by real property and in collecting alleged debts in connection with these loans;

b.     Whether Ocwen has engaged in a uniform practice of assessing improper late fees;

c.     Whether Ocwen has improperly and illegally charged customers for force-placed insurance products;

d.     Whether Ocwen has unfairly initiated collections proceedings and charged erroneous related fees;

e.     Whether the Defendants have engaged in improper debt collection activities in violation of federal and state law;

f.    Whether the Defendants have engaged in improper foreclosure activities;

g.    Whether Ocwen has systematically misapplied customer payments;

h.    Whether Ocwen has breached contracts with customers;

i.    Whether Ocwen has assessed improper and excessive prepayment penalties;

j.    Whether the Defendants have been unjustly enriched;

k.    Whether the Defendants have violated RESPA;

l.    Whether the Defendants have violated the FDCPA;

m.    Whether the Defendants have violated the state consumer fraud acts, including the laws of California, Illinois, Minnesota, New Mexico, Pennsylvania and Washington;

n.    Whether the Defendants have violated applicable bankruptcy laws and court orders;

o.    Whether Plaintiffs and Class members are entitled to the injunctive and equitable relief requested herein, including restitution and rescission of the loan agreements; and

p.    Whether Plaintiffs and Class members have sustained damages, and the proper measure of damages.

98.    Plaintiffs' claims are based on form loan documents, standardized servicing and debt collection practices, form letters, and accounting standards that were used or implemented by the Defendants on a nationwide basis.

99.    Defendants and their principals controlled and implemented the challenged practices on a uniform basis from their central offices.

100.    There are no substantial individual questions among the class claims, other than the amount of relief each Class member is entitled to receive. Common questions thus predominate.

101.    Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and all other Class members sustained harm arising out of the Defendants' common course of wrongful conduct.

102.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and Plaintiffs have retained counsel competent and experienced in class action, unfair lending, loan servicing, and consumer fraud litigation.

103.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the Defendants within the meaning of Rule 23(b)(1)(A).

104.    The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole within the meaning of Rule 23(b)(2).

105.    Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members within the meaning of Rule 23(b)(3).

106.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would likely find the cost of adjudicating their claims to be prohibitive, and would have no effective remedy at law. Separate individual actions would be inefficient from the standpoint of the judicial system.

107.    In addition to the Class, Plaintiffs also bring claims on behalf of six separate Subclasses consisting of residents from the states of California, Illinois, Minnesota, New Mexico, Pennsylvania and Washington, and a Bankruptcy Subclass. The Subclass representatives reallege and reincorporate the preceding paragraphs as relates to their satisfaction of the Rule 23 criteria.

## TOLLING OF STATUTES OF LIMITATIONS BY FRAUDULENT CONCEALMENT

108.    Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiffs and members of the Class could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

109.    In the alternative, the Defendants should be estopped from relying on any statutes of limitations.  The Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices.  The Defendants owed Plaintiffs and other members of the Class an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Violations of Real Estate Settlement Procedures Act)
(12 U.S.C. § 2601 *et seq.*)
**(By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the Ocwen Defendants)**

110.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

111.    As a servicer of home mortgage loans, Ocwen is, in relevant part, governed by the mandates of the Real Estate Settlement Procedures Act ("RESPA").

112.    Ocwen is primarily in the business of servicing loans initiated through other mortgage lenders.  Under RESPA, specifically 12 U.S.C. §2605(d) , and the implementing regulation, Reg. X, 24 C.F.R. §3500.21(d)(5), loan servicers such as Ocwen cannot impose late fees or treat payments as late during the 60-day grace period following the effective date of loan transfer if a consumer sends a payment to his or her old servicer.

113.    Furthermore, it is a violation to refuse to issue, or delay in the issuance of, dollar figures for reinstatement or pay-offs of the subject promissory notes, or to refuse to make appropriate corrections to the record after receipt of qualified written requests from borrowers.

MDL NO. 1604
AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

It is also a violation to neglect to properly notify the borrower in writing of the transfer of a loan for servicing.

114.     Ocwen regularly and routinely violates these and other provisions of RESPA, causing injury to Class members, and such violations constitute a pattern and practice of noncompliance with RESPA.

## SECOND CAUSE OF ACTION
### (Violations of the Fair Debt Collection Practices Act)
### (15 U.S.C. §§ 1692, *et seq.*)
### (By All Representative Plaintiffs on Behalf of Themselves and the Class as Against Defendants Ocwen and Moss, Codilis)

115.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

116.     The Ocwen and Moss, Codilis Defendants are debt collectors within the meaning of the Fair Debt Collection Practices Act ("FDCPA").

117.     The Ocwen and Moss, Codilis Defendants violated the FDCPA, 15 U.S.C. §§1692e, 1692f and 1692f(1), by the following acts (including and not by way of limitation): collecting "recoverable breach fees" that were not authorized by the contract (note and mortgage) and sending demand letters that contained false, misleading and/or deceptive representations as to the amount of debt, the amounts incurred for attorneys' fees, and the amount of time allowed for reinstatement prior to the imposition of foreclosure proceedings.

118.     Plaintiffs were damaged as a result of Defendants' violations.

## THIRD CAUSE OF ACTION
### (Fraudulent Concealment)
### (By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the Ocwen Defendants)

119.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

120.     When Ocwen purchased Plaintiffs' and Class members' loans, Ocwen knew of material facts not known by the Class.

121. The Ocwen Defendants concealed material facts known to them but not to Plaintiffs and the Class members, including, without limitation, the right of Plaintiffs and the Class members to avoid late charges for 60 days when sending payments to their previous lenders; and the unauthorized nature of many of Ocwen's charges.

122. The Ocwen Defendants intentionally concealed these material terms of the loans with the intent to defraud Plaintiffs and the Class members by inducing them to maintain their loans with Ocwen.

123. Plaintiffs and Class members at the time of the above-alleged concealment were unaware of the true facts. As a result of the Ocwen Defendants' omissions, Plaintiffs and Class members forestalled taking any action to protect their interests since the Ocwen Defendants concealed the true facts from them. Plaintiffs and Class members would not have maintained Ocwen as the servicer of their loans if all material terms had been disclosed to them.

124. As a proximate result of the Defendants' conduct herein alleged, Plaintiffs and Class members were damaged, including without limitation, by loss of equity in their homes through payment of improper late charges, force-placed insurance, and other unauthorized charges.

125. The actions taken by Defendants set forth above were in all respects malicious, willful and oppressive, and/or fraudulent, and manifested either disregard or contempt for the rights of Plaintiffs and Class members. Plaintiffs and Class members are thereby entitled to an award of punitive and exemplary damages in an amount according to proof at time of trial.

### FOURTH CAUSE OF ACTION
#### (Unjust Enrichment)
#### (By All Representative Plaintiffs on Behalf of Themselves and the Class as Against All Defendants)

126. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

127. By its wrongful acts and omissions, the Defendants have been unjustly enriched at the expense of Plaintiffs and the Class, and thus Plaintiffs and the Class have been unjustly deprived.

128. By reason of the foregoing, Plaintiffs and the members of the Class seek restitution from Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)
**(By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the Ocwen Defendants)**

129. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

130. All of the Plaintiffs had original loan agreements that set forth dates by which monthly principal and interest payments were due, and dates providing a grace period before the end of which late fees could not be assessed.

131. Ocwen assumed the obligations of the Plaintiffs' loan agreements when it took over the servicing of their loans.

132. Plaintiffs satisfied their obligations by making timely payments of principal and interest on their loans.

133. By charging late fees on payments that were not late, Ocwen breached its contracts with Plaintiffs and the Class.

134. By increasing the monthly payment amount due without notice to Plaintiffs, Ocwen breached its contracts with Plaintiffs and the Class.

135. By demanding payment of attorneys' fees in connection with legal proceedings that have not commenced and/or that have not yet been incurred, Ocwen breached its contracts with Plaintiffs and the Class.

136.     Ocwen's treatment of timely payments as late or inadequate caused Plaintiffs and the Class to suffer damages, in that they were charged improper late fees as well as fees resulting from the alleged lateness or inadequacy, and/or from misapplied payments.

137.     Ocwen breached its contracts with class members who filed bankruptcy by assessing and collecting fees that were not permitted by bankruptcy law or which were not reasonable in light of bankruptcy court orders disallowing those fees.

138.     Ocwen breached its contracts with Class members by assessing greater prepayment penalties than are permitted by the terms of the loan agreements, causing injury and loss to Plaintiffs and the Class.

139.     In addition to imposing unwarranted late fees, Plaintiffs and Class members suffered further harm in that their credit was irreparably damaged due to Ocwen reporting to the national credit reporting agencies that they have been delinquent or in default when, in fact, they have not been delinquent under grace periods prescribed by contract or law.

140.     Ocwen's beach of contract is in violation of the common law of contract of the State of Florida, from where the contracts originated, and/or the contract laws in every state in which Ocwen does business.

141.     As a result of Ocwen's wrongful conduct, Plaintiffs and the members of the Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

### SIXTH CAUSE OF ACTION
**(Breach of the Covenant of Good Faith and Fair Dealing)**
**(By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the Ocwen Defendants)**

142.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

143.     The subject contracts between Plaintiffs and members of the Class on one hand, and Ocwen on the other, included a duty of good faith and fair dealing. Pursuant to an implied covenant in the subject contracts, Ocwen had a duty not to do anything which would

deprive Plaintiffs and members of the Class of the benefits of those contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purpose or purposes of the subject contracts.

144. The Ocwen Defendants acted in breach of the implied covenant of good faith and fair dealing, and their duties thereunder.

145. As a result of Ocwen's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages, all in an amount to be determined according to proof at time of trial, including attorney fees and reasonable costs.

146. Defendant acted with oppression, fraud and malice in engaging in the business practices described above, such that Plaintiffs and members of the Class are entitled to punitive damages in an amount to be established at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)
**(By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the All Defendants)**

147. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

148. Ocwen's actions alleged in the Complaint amounted to conversion of funds.

149. By its actions, Ocwen has injured Plaintiffs and the Class, who have suffered damages to an extent to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)
**(By All Representative Plaintiffs on Behalf of Themselves and the Class as Against the All Defendants)**

150. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

151. On each cause of action stated above, Plaintiffs and the Class will be irreparably injured in the future by the Defendants' misconduct.

152.     Plaintiffs, on behalf of themselves and all Class members, seek a judgment declaring that the Defendants must cease the activities described herein, and provide for adequate procedures and policies for the immediate and complete refund of the improper charges and insurance premiums unlawfully assessed, as well as the proper allocation of misapplied payments.

153.     Plaintiffs and the Class members do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of the Defendants' misconduct unless injunctive and declaratory relief is granted.

154.     By reason of the foregoing, Plaintiffs and the Class members are entitled to declaratory and injunctive relief as set forth herein.

### NINTH CAUSE OF ACTION
**(Unfair, Unlawful, and Deceptive Business Acts and/or Practices**
**In Violation of California Business & Professions Code §§ 17200 et seq.)**
**(By Plaintiffs Antoine, De Kerguelen, DeKett, Jackson, Youtsey, Spires, McDonald,**
**Amamgbo, Maddox, and Telfer on Behalf of Themselves, the General Public, and a**
**Subclass of California Residents ("California Subclass") as Against Defendants Ocwen**
**Financial Corporation, Ocwen Loan Servicing, LLC, Moss, Codilis, and Cal-Western)**

155.     Plaintiffs Antoine, De Kerguelen, DeKett, Jackson, Youtsey, Spires, McDonald, Amamgbo, Maddox, and Telfer [hereinafter "California Plaintiffs"] hereby incorporate by reference the allegations contained in all preceding paragraphs.

156.     California Business & Professions Code §§ 17200 et seq. prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

157.     The Ocwen Defendants engaged in unlawful, unfair or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, et seq., by engaging in such unlawful conduct as: (a) assessing improper or excessive late fees; (b) improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees; (c) instituting improper or premature foreclosure proceedings to generate unwarranted fees; (d) misapplying or failing to apply customer payments; (e) force

placing insurance on properties that already have insurance coverage; (f) failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed; (g) imposing improper Broker Price Opinion (BPO), property inspection, and recoverable breach fees; and (h) wrongfully forcing customers to enter into forbearance agreements, and making improper negative reports about customers who have entered into forbearance agreements.

158.     The Moss, Codilis Defendants and Cal-Western engaged in unlawful, unfair or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.*, by engaging in such unlawful conduct as pursuing improper or premature foreclosure proceedings to generate unwarranted fees.

159.     Each Defendant's conduct is unlawful in that it is in violation of one or more such statutes and regulations as, for example, (a) California Civil Code §2954.4 (providing that a late charge may not be imposed on any installment within ten days of its due date); (b) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(d); reg. X, 24 C.F.R. § 3500.21(d)(5) (providing that loan servicers such as Ocwen can not impose late fees, treat payments as late, or report any lateness to the national credit reporting agencies during the 60-day grace period following the effective date of loan transfer if a consumer sends a payment to his/her old servicer during that time); and (c) the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").

160.     The foregoing acts and practices are also unfair and/or fraudulent within the meaning of § 17200 in that they are likely to mislead the public as to the amounts actually owed on their loans, and in that they force customers to pay amounts they do not actually owe under threat of losing their homes.

161.     The foregoing acts and practices have caused substantial harm to the California Plaintiffs, the general public, and the California Subclass.

162.     As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of the Ocwen and Moss, Codilis Defendants and Cal-Western, California

Plaintiffs and the California Subclass have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees, insurance premiums, and other improper fees and charges.

163. By reason of the foregoing, the Ocwen and Moss, Codilis Defendants and Cal-Western have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to the California Plaintiffs, the general public, and the California Subclass, and/or be enjoined from continuing in such practices pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## TENTH CAUSE OF ACTION
(Unfair or Deceptive Acts or Practices in Violation
of California Civil Code Section 1750 *et seq.*)
(By Plaintiffs Antoine, De Kerguelen, DeKett, Jackson, Youtsey,
Spires, McDonald, Amamgbo, Maddox, and Telfer
on Behalf of Themselves and the California Subclass as Against the Ocwen Defendants and
Moss, Codilis)

164. The California Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

165. By their wrongful conduct as alleged herein, the Ocwen and Moss, Codilis Defendants have created, engaged in and/or participated in unfair practices, in violation of the Consumers Legal Remedies Act, California Civil code sections 1750 *et seq.*

166. The Ocwen Defendants, by their conduct, have engaged in unfair or deceptive acts or practices intended to result in the sale of their goods and services in violation of California Civil Code section 1750 *et seq.*, including but not limited to:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, characteristics, status, affiliation, or connection which he or she does not have, in violation of section 1770(a)(5); and

b. Representing that a transaction confers or invokes rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of section 1770(a)(14); and

c. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of section 1770(a)(16).

167. The Ocwen Defendants aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, the Ocwen Defendants acted with an awareness of their primary wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrongdoing.

168. Pursuant to section 1780, California Plaintiffs and members of the California Subclass seek to enjoin the Ocwen Defendants from engaging in their unfair practices as alleged herein.

169. In compliance with § 1782 of the CLRA, Plaintiffs served concurrently with this Complaint, written notice to the Ocwen Defendants of their violations of § 1770, as alleged above, and have demanded that the Ocwen Defendants remedy the situation by providing complete monetary and other relief to the California Plaintiffs and all affected California customers.

170. The Ocwen Defendants failed to respond to Plaintiffs' notice with 30 days (or thereafter) and failed to provide appropriate relief. Therefore, in accordance with §§ 1780(a)(1), (4)-(5), 1780(d), and 1782(b), Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper, for the Ocwen Defendants' violations of the CLRA.

171. In addition, on February 24, 2004 counsel for Plaintiff Telfer sent a Notice of Violation of Consumers Legal Remedies Act and Demand for Remedy to Moss, Codilis that stated that by failing to provide the required thirty day validity/verification required by the FDCPA, and claiming that the debt collection letter sent to Plaintiff Telfer was issued from a law firm and that the lawyers were licensed to practice law in the state of California, Moss, Codilis

had misrepresented its right to collect a purported debt. Therefore, Moss, Codilis violated subdivisions (a)(14) and (a)(19) of § 1770 of the California Civil Code. Moss, Codilis did not respond to the notice within 30 days, or at any time thereafter.

172. The actions described above constitute unlawful, unfair and/or defective acts or practices within the meaning of the Consumer Legal Remedies Act. The California Plaintiffs and the California Subclass are entitled to actual damages, statutory damages, punitive damages, restitution and disgorgement of any funds received that was a result of the acts and omissions complained of herein and injunctive relief to prevent the use or employment by Defendant Moss, Codilis of the practices alleged herein, along with costs, attorney's fees and any other relief which the Court deems proper.

### ELEVENTH CAUSE OF ACTION
**(Violation of California Civil Code Section 1788 *et seq.*
The Rosenthal Fair Debt Collection Practices Act)
(By Plaintiffs Antoine, De Kerguelen, DeKett, Jackson, Youtsey, Spires,
McDonald, Amamgbo, Maddox, and Telfer
on Behalf of Themselves and the California Subclass as Against the Ocwen and Moss,
Codilis Defendants)**

173. The California Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

174. The conduct of the Ocwen and Moss, Codilis Defendants violates the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 *et seq.* (hereafter "the Rosenthal FDCPA"), which prohibits debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts.

175. Ocwen and Moss, Codilis are debt collectors within the meaning of the Rosenthal FDCPA.

176. The violations of the Rosenthal FDCPA by the Ocwen and Moss, Codilis Defendants include, but are not limited to, the following:

    a.    Falsely representing that all fees are incurred and may be added to the debts.

b. Falsely representing and collecting charges as attorneys' fees when no such attorneys' fees were actually incurred.

177. As a result of Defendants' violations of the Rosenthal FDCPA, California Plaintiffs and the California Subclass have been injured.

## TWELFTH CAUSE OF ACTION
### (Violations of the Fair Debt Collection Practices Act)
### (15 U.S.C. §§ 1692, *et seq.*)
### (By Plaintiff Telfer on Behalf of Himself and the California Subclass as Against Cal-Western)

178. Plaintiff Telfer hereby incorporates by reference the allegations contained in all preceding paragraphs, including but not limited to the allegations of the Second Cause of Action above.

179. Plaintiff Telfer is a consumer as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

180. Cal-Western is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692(a)(6). The debt collection letter that Cal-Western sent to Plaintiff Telfer violates the FDCPA, 15 U.S.C. § 1692(g), in that it misrepresents that the right to dispute a debt may only be made in writing when the law makes no such limitation.

181. Pursuant to 15 U.S.C. § 1692(k), Plaintiff Telfer alleges that these violations take place in a routine manner and that Cal-Western has failed to comply with the requirement stated above, and is liable to Plaintiff Telfer and the California Subclass for actual, statutory, and punitive damages, and other relief and such attorney's fees and costs as the Court deems proper.

## THIRTEENTH CAUSE OF ACTION
### (Violation of the New Mexico Unfair Trade Practices Act)
### (N.M.S.A. 1978, §§ 57-12-1, *et seq.*)
### (By Plaintiffs Snider and Jaramillo on Behalf of Themselves and a Subclass of New Mexico Residents [the "New Mexico Subclass"] as Against the Ocwen and Moss, Codilis Defendants)

182. Plaintiffs Snider and Jaramillo ["New Mexico Plaintiffs"] hereby incorporate by reference the allegations contained in all preceding paragraphs.

183.    Defendants' acts and omissions itemized in the preceding paragraphs constitute false and/or misleading statements and representations knowingly made in connection with the extension of credit and the collection of debts in Defendants' regular course of business. These acts and omissions may, tended to, and did deceive and mislead New Mexico Plaintiffs and members of the New Mexico Subclass, thus constituting an "unfair or deceptive trade practice" within the meaning of the Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 *et seq.*

184.    Defendants' acts and omissions itemized in the preceding paragraphs constitute acts and practices in connection with the extension of credit and in the collection of debts that, to the detriment of the New Mexico Plaintiffs and members of the New Mexico Subclass, took advantage of Subclass members' lack of knowledge, ability, experience or capacity to a grossly unfair degree, and/or resulted in a gross disparity between the value received by Subclass members and the price paid, thus constituting an "unconscionable trade practice" within the meaning of the Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 *et seq.*

185.    As a direct and proximate result of these unfair, deceptive and unconscionable trade practices, New Mexico Plaintiffs and the New Mexico Subclass suffered damages.

## FOURTEENTH CAUSE OF ACTION
### (Violation of the Illinois Consumer Fraud Act)
### (815 ILCS 505/2)
**(By Plaintiffs Michele and Ryan E. McAuliffe on Behalf of Themselves and a Subclass of Illinois Residents [the "Illinois Subclass"] as Against the Ocwen and Moss, Codilis Defendants)**

186.    Plaintiffs Michele and Ryan E. McAuliffe ["Illinois Plaintiffs"] hereby incorporate by reference the allegations contained in all preceding paragraphs.

187.    Defendants' practices of demanding payment of attorney's fees in connection with legal proceedings that are unearned or have not yet been incurred constitutes a violation of the Illinois Consumer Fraud Act. Specifically, Defendants demand payment of fees for an entire foreclosure case at its inception.

188.     Defendants engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by making such demands. Such conduct was carried out in the course of trade and commerce, and for the purpose of inducing the Illinois Plaintiffs and the Illinois Subclass to rely on Defendants' demands.

189.     Illinois Plaintiffs and the Illinois Subclass were injured as a result of Defendants' intentional and malicious conduct.

190.     Illinois Plaintiffs and the Illinois Subclass are entitled to relief for damages suffered by virtue of the Ocwen and Moss, Codilis Defendants' violations of the Illinois Consumer Fraud Act.

### FIFTEENTH CAUSE OF ACTION
**(Violation of the Pennsylvania Consumer Protection Law)**
**(73 P.S. §§ 201-1 *et seq.*)**
**(By Plaintiff Moore on Behalf of Herself and a Subclass of Pennsylvania Residents [the "Pennsylvania Subclass"] as Against the Ocwen and Moss, Codilis Defendants)**

191.     Plaintiff Moore ["Pennsylvania Plaintiff"] hereby incorporates by reference the allegations contained in all preceding paragraphs.

192.     Defendants have committed numerous violations of the Pennsylvania CPL, including, but not limited to, the following:

a.     misrepresenting the amounts, fees and costs due on borrower's loans;

b.     imposing and collecting late fees when loan payments have been made in a timely fashion and then pyramiding late charges in violation of provisions of the uniform mortgage documents for the loans Ocwen services and of the Pennsylvania CPL;

c.     applying loan payments to wrongful fees and charges first, and then to principal and interest, which has the affect of making a loan payment insufficient to cover the principal and interest due, causing further wrongful fees and charges to accrue;

d.     imposing and collecting attorney fees and collection costs that are not permitted by contract or that have not been actually incurred or that are otherwise unreasonable, and that are illegal under the Pennsylvania CPL;

e.      imposing and collecting charges for property inspections, appraisals and broker price opinions in excess of the cost of those items or when no such service has actually been performed;

f.      failing to provide borrowers with itemizations of collection charges, costs and fees imposed as a condition of reinstating or paying off their loans;

g.      coercing borrowers to remit payments through EZ Pay and/or other expedited payments systems and/or receiving a portion of the fee without advising borrowers of this fact;

h.      by and through the aforesaid actions, threatening borrowers with and forcing borrowers into foreclosure, placing them at risk of losing their homes if they do not pay the wrongful and predatory loan charges;

i.      engaging in other deceptive conduct which has the effect of causing consumer confusion and misunderstanding;

193.    As a direct and proximate result of Ocwen's violations of Pennsylvania law, Pennsylvania Plaintiff and the Pennsylvania Subclass have suffered ascertainable losses thereby entitling them to an award of treble damages and attorneys' fees pursuant to the CPL. But for Ocwen's misleading statements and omissions and/or violations of the Pennsylvania Consumer Protection Law, the Pennsylvania Subclass' loan balances would not be increased, their interest charges would have been lower and their credit reports would not have reflected a delinquency and default.

### SIXTEENTH CAUSE OF ACTION
**(Violation of the Pennsylvania Fair Credit Extension Uniformity Act)**
**(73 P.S. §§ 2270.1 *et seq.*)**
**(By Plaintiff Moore on Behalf of Herself and a Subclass of Pennsylvania Residents [the "Pennsylvania Subclass"] as Against the Ocwen and Moss, Codilis Defendants)**

194.    Pennsylvania Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs.

195.    Pennsylvania Plaintiff is a "debtor" as defined by section 2270.0 of the FCEUA.

196.    The letters sent by Defendants are "communications" relating to a "debt" as defined by section 2270.3 of the FCEUA.

197.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by the Pennsylvania CPL, by attempting to collect the debt in violation of the FCEUA, and otherwise. Defendants violated the FCEUA and CPL by engaging in the following conduct:

        a.    attempting to collect improper, unauthorized and excessive default related fees, as aforesaid;

        b.    using unfair and unconscionable collection methods;

        c.    giving a false impression of the character, amount, or legal status of the alleged debt;

        d.    using false or deceptive collection methods;

        e.    making threats to take action which cannot legally be taken;

        f.    otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt; and

        g.    otherwise engaging in deceptive conduct which created a likelihood of confusion or of misunderstanding.

198.    Defendants' acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Pennsylvania Plaintiff's rights under the law and with the purpose of coercing Pennsylvania Plaintiff to pay the debt.

199.    As a result of the above violations of the FCEUA and CPL, Pennsylvania Plaintiff and the Pennsylvania Subclass has suffered ascertainable losses entitling Pennsylvania Plaintiff and the Pennsylvania Subclass to an award of statutory, actual and treble damages and attorney's fees and costs.

-37-

## SEVENTEENTH CAUSE OF ACTION
### (Violation of the Washington Consumer Protection Act)
### (RCW 19.86.01 *et seq.*)
### (By Plaintiffs Napier, Tomson, and Standley on Behalf of Themselves and a Subclass of Washington Residents [the "Washington Subclass"] as Against the Ocwen and Moss Codilis Defendants)

200.    Plaintiffs Napier, Tomson, and Standley ["Washington Plaintiffs"] hereby incorporate by reference the allegations contained in all preceding paragraphs.

201.    Moss, Codilis was licensed as an out of state collection agency in the State of Washington during the relevant time.

202.    Defendants' actions are unfair and/or deceptive within the meaning of the Washington Consumer Protection Act, RCW 19.86.01 *et seq.*

203.    Defendants' actions have a tendency or capacity to mislead consumers in the amount actually owed on a deed of trust or other mortgage loan contract.

204.    Defendants' conduct occurs in commerce and trade and directly or indirectly affects the people of the State of Washington through their mortgage/deed of trust collection activities.

205.    Defendants' general course of conduct has an impact on the public interest, and the acts complained of herein have a substantial likelihood of being repeated.

206.    Defendants' conduct injured the Washington Plaintiffs and their property in an amount to be proven at trial.

207.    As a result of Defendants' conduct, Defendants are liable to the Washington Plaintiffs and the Washington Subclass for statutory, actual, and treble damages, attorney's fees and costs, and injunctive relief.

## EIGHTEENTH CAUSE OF ACTION
### (Violation of the Washington Collection Agency Act)
### (RCW 19.16.250 *et seq.*)
### (By Plaintiffs Napier, Tomson, and Standley on Behalf of Themselves and the "Washington Subclass" as Against the Ocwen and Moss, Codilis Defendants)

208.    The Washington Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

209.     Moss, Codilis was licensed as an out of state collection agency in the State of Washington during the relevant time.

210.     Defendants' actions are in contravention of RCW 19.16.130 and 19.16.250, are unfair and/or deceptive as those terms are defined in RCW 19.16.440 and violative of RCW 19.16.440.

211.     Defendants' actions have a tendency or capacity to mislead consumers in regard to Defendants' status and the amount actually owed on a deed of trust or mortgage loan contract being collected upon by Defendants.

212.     Defendants' conduct occurs in commerce and trade and directly or indirectly affects the people of the State of Washington through their mortgage/deed of trust collection activities.

213.     Defendants' general course of conduct has an impact on the public interest, and the acts complained of herein have a substantial likelihood of being repeated.

214.     Defendant Ocwen is a "customer" of Moss, Codilis and is responsible for the consequences of the unlawful conduct of Moss, Codilis pursuant to RCW 19.16.450.

215.     Defendants' conduct injured the Washington Plaintiffs and their property in an amount to be proven at trial.

216.     As a result of Defendants' conduct, Defendants are liable to the Washington Plaintiffs and the Washington Subclass for statutory, actual, and treble damages, attorney's fees and costs, and injunctive relief.

## NINETEENTH CAUSE OF ACTION
### (Violation of the Minnesota Deceptive Trade Practices Act)
### (Minn. Stat. §§ 58.13, 325D.44 and 325F.69)
### (By Plaintiffs Thomas B. Doherty and Elvie Doherty
### on Behalf of Themselves and a Subclass of Minnesota Residents
### [the "Minnesota Subclass"] as Against the Ocwen Defendants)

217.     Plaintiffs Thomas B. Doherty and Elvie Doherty ["Minnesota Plaintiffs"] hereby incorporate by reference the allegations contained in all preceding paragraphs.

218. The Minnesota Plaintiffs bring a cause of action for themselves and the Minnesota Subclass who were charged a prepayment penalty assessed on a mortgage loan made in the State of Minnesota during the relevant time period.

219. At all relevant times, Minn. Stat. §§ 58.13, 325D.44 and 325F.69 have prohibited false, misleading, and deceptive trade practices in connection with one's trade or business, mortgage servicing, and/or the sale of services. Minn. Stat. § 8.31 allows consumers like the Minnesota Plaintiffs and the Minnesota Subclass to bring claims for damages, equitable relief, costs and attorneys' fees for the violation of said sections.

220. The Ocwen Defendants' conduct in demanding excessive and prohibitive prepayment charges and representing to the Minnesota Plaintiffs and the Minnesota Subclass that they are entitled to receive such charges constitutes unlawful, deceptive, and misleading practices under Minn. Stat. §§ 58.13, 325 D.44 and Minn. Stat. § 325 F.69.

221. The Ocwen Defendants' written payoff statements and related acts, statements and/or omissions demanding that excessive prepayment penalties be paid when paying off its loans, were misleading and deceptive, and done with the intent that the Minnesota Plaintiffs and the Minnesota Subclass members would rely on those acts, statements and/or omissions.

222. The Ocwen Defendants' acts, statements and/or omissions representing that excessive fees must be paid when paying off its loans caused a likelihood of confusion or misunderstanding as to their contractual rights and duties on the part of the Minnesota Plaintiffs and the Minnesota Subclass.

223. At the time of the loan payoffs, the Ocwen Defendants had a duty to properly account to its borrowers for the amounts properly due, within the contractual and legal restrictions that existed.

224. The unfair and deceptive practices described above were committed by the Ocwen Defendants in the conduct of trade and commerce in (a) services, (b) real estate, (c) goods and merchandise, and/or (d) financing.

225.    The Minnesota Plaintiffs and the Minnesota Subclass members justifiably relied on the Ocwen Defendants' payoff statements and that Defendants can not engage in unfair, misleading, or deceptive practices to their detriment.

226.    The Ocwen Defendants' action caused injury and loss to the Minnesota Plaintiffs and the Minnesota Subclass.

227.    By reason of the foregoing, the Ocwen Defendants violated laws prohibiting misleading and deceptive trade practices, including Minn. Stat. §§ 58.13, 325D.44 and Minn. Stat. § 325F.69.

228.    By reason of the foregoing, Minnesota Plaintiffs and the Minnesota Subclass have been injured and are entitled to recover and may thereby seek to collect, from the Ocwen Defendants, actual damages, restitution, disgorgement of any and all prohibited, improper and excessive fees collected, interest on said fees, profits derived by the Ocwen Defendants from such fees, as well as any and all other amounts, damages or penalties allowed to be recovered by law, reasonable attorneys' fees and costs, and any other general or specific relief to which the Minnesota Plaintiffs and the Minnesota Subclass may be entitled.

### TWENTIETH CAUSE OF ACTION
#### (Accounting)
#### (By the Minnesota Plaintiffs
#### on Behalf of Themselves and the Minnesota Subclass as Against the Ocwen Defendants)

229.    The Minnesota Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

230.    The Ocwen Defendants have a duty and obligation to properly inform and represent to the Minnesota Plaintiffs and the Minnesota Subclass the correct and accurate amount due when the Minnesota Plaintiffs and the Minnesota Subclass seek to satisfy their loan obligations and have the liens held by the Ocwen Defendants on their property released.

231.    As alleged above, the Ocwen Defendants failed to meet their duties.

232.    The Ocwen Defendants, by the actions above alleged, have collected money of the Minnesota Plaintiffs and the Minnesota Subclass under such circumstances that in

equity and good conscience it cannot retain, and which in justice and fairness belongs to the Minnesota Plaintiffs and the Minnesota Subclass.

233.    As it would be inequitable for the Ocwen Defendants to retain the excessive funds charged and collected, the Ocwen Defendants should be ordered to account to the Minnesota Plaintiffs and the Minnesota Subclass from which they demanded and received a prepayment charge during the class period to ensure that only the proper and permitted amount that was collected by the Ocwen Defendants is retained. The Ocwen Defendants should be ordered to recalculate each prepayment charge demanded and collected from the Minnesota Plaintiffs and the Minnesota Subclass during the class period, and to refund and disgorge all improper and excessive amounts collected, profits derived therefrom, and interest thereon.

**TWENTY-FIRST CAUSE OF ACTION**
**(Violation of the Bankruptcy Laws and Bankruptcy Court Orders)**
**(11 U.S.C. § 105, 362(h), 524(a)(2), 506(b) and Fed. R. Bankr. P. 2016(b))**
**(By Plaintiffs Carreon and Tebbs on Behalf of Themselves and a Subclass of Individuals**
**Who Have Filed Bankruptcy [the "Bankruptcy Subclass"] as Against the Ocwen**
**Defendants)**

234.    The Bankruptcy Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

235.    By assessing and/or collecting bankruptcy fees and bankruptcy costs without court authorization Ocwen violated the automatic stay, 11 U.S.C. §362(a) and the discharge injunction, 11 U.S.C. § 524(a)(2). Said violations were knowing and/or willful within the meaning of the law. Ocwen is liable for said violations under 11 U.S.C. §§ 362(h) and 105.

236.    By assessing and/or collecting bankruptcy fees and bankruptcy costs without bankruptcy court authorization after a plan confirmation order is entered, Ocwen is in contempt of the provisions of the applicable confirmed chapter 13 bankruptcy plans. Ocwen is liable for said violations under 11 U.S.C. § 105.

237.    By assessing and/or collecting bankruptcy fees and bankruptcy costs in amounts in excess of amounts specifically allowed to it by court order, Ocwen has violated the bankruptcy law and bankruptcy court orders is liable under 11 U.S.C. § 105.

238. Ocwen's conduct also violates 11 U.S.C. §506(b) and Fed. R. Bankr. P. 2016 and is sanctionable under 11 U.S.C. § 105.

## TWENTY-SECOND CAUSE OF ACTION
### (Slander of Title Under New Mexico Law)
### (By Plaintiffs Snider, and Jaramillo on Behalf
### of Themselves as Individuals as Against the Ocwen and Moss, Codilis Defendants)

239. The New Mexico Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

240. On information and belief, Defendants willfully and maliciously, and without privilege to do so, recorded *Lis Pendens* on property of the New Mexico Plaintiffs based on false statements. On information and belief, such *Lis Pendens* were untrue and disparaging to New Mexico Plaintiffs' property rights in their homes. It was reasonably foreseeable that the conduct of third parties, including lenders, would be determined by the filing of *Lis Pendens*. On information and belief, because of *Lis Pendens*, New Mexico Plaintiffs were unable to refinance their property, or had difficulty in doing so to their loss and detriment.

241. As a direct and proximate result of Defendants' slander of title, New Mexico Plaintiffs suffered damages as set forth below and incorporated herein by reference.

## TWENTY-THIRD CAUSE OF ACTION
### (Negligence)
### (By Plaintiffs Snider and Jaramillo
### on Behalf of Themselves as Individuals as Against the Ocwen and Moss, Codilis
### Defendants)

242. Plaintiffs Snider and Jaramillo hereby incorporate by reference the allegations contained in all preceding paragraphs.

243. The Ocwen and Moss, Codilis Defendants owed a duty to exercise ordinary care to avoid harm to the persons and properties of Plaintiffs Snider and Jaramillo.

244. Ocwen and Moss, Codilis breached this duty by the practices alleged in the preceding paragraphs.

245. As a direct and proximate result of Ocwen and Moss, Codilis' negligence, Plaintiffs Snider and Jaramillo suffered damages.

MDL NO. 1604
AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

### TWENTY-FOURTH CAUSE OF ACTION
#### (Intentional, Negligent or Reckless Misrepresentation)
#### (By Plaintiffs Snider and Jaramillo on Behalf of
#### Themselves as Individuals as Against the Ocwen and Moss, Codilis Defendants)

246.    Plaintiffs Snider and Jaramillo hereby incorporate by reference the allegations contained in all preceding paragraphs.

247.    Ocwen, and Moss, Codilis negligently and/or fraudulently made false and misleading misrepresentations of fact to Plaintiffs Snider and Jaramillo.

248.    Ocwen and Moss, Codilis knew or should have known the falsity of the representations.

249.    Ocwen and Moss, Codilis intended to deceive Plaintiffs Snider and Jaramillo and induce their reliance, and/or should reasonably have foreseen that Plaintiffs Snider and Jaramillo would be harmed if the information conveyed was not correct or was misleading.

250.    Plaintiffs Snider and Jaramillo justifiably relied on these misrepresentations to their detriment.

251.    As a direct and proximate result of the representations, Plaintiffs Snider and Jaramillo suffered damages, including punitive damages.

### TWENTY-FIFTH CAUSE OF ACTION
#### (Defamation)
#### (By Plaintiffs Snider and Jaramillo on Behalf of
#### Themselves as Individuals as Against the Ocwen and Moss, Codilis Defendants)

252.    Plaintiffs Snider and Jaramillo hereby incorporate by reference the allegations contained in all preceding paragraphs.

253.    Ocwen and Moss, Codilis defamed Plaintiffs Snider and Jaramillo by falsely reporting to credit reporting agencies and/or other third parties that Plaintiffs Snider and Jaramillo were delinquent and/or in default.

254.    Ocwen and Moss, Codilis  knew or should have known that this information was false.

255.    Ocwen and Moss, Codilis failed to correct this erroneous information.

256.     As a direct and proximate result of this defamation, Plaintiffs Snider and Jaramillo suffered damage to their reputations and other damages.

### TWENTY-SIXTH CAUSE OF ACTION
#### (Fraud and Deceit)
#### (By Plaintiff Jackson on Behalf of Herself as an Individual as Against the Ocwen Defendants)

257.     Plaintiff Jackson hereby incorporate by reference the allegations contained in all preceding paragraphs.

258.     The conduct of the Ocwen Defendants constitutes a fraud against Plaintiff Jackson. The Ocwen Defendants, directly or through their agents and employees, made false representations, concealments and nondisclosures to Plaintiff Jackson, knowing the falsity of their representations, concealments and nondisclosures, and with the intent to defraud Plaintiff Jackson. Plaintiff Jackson reasonably relied upon these false representations, concealments and nondisclosures by Ocwen, which reliance was justified. As a result, Plaintiff Jackson sustained damages.

259.     As a result of the wrongful conduct of the Ocwen Defendants, Plaintiff Jackson has suffered, and continues to suffer, economic losses and other general and specific losses, including but not limited to the monies paid to the Ocwen Defendants, all in an amount to be determined according to proof at time of trial.

260.     The wrongful acts of the Ocwen Defendants were done maliciously, oppressively and with intent to defraud, and Plaintiff Jackson is entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish and set an example of Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Class and the Subclasses (and, as to the Ninth Cause of Action, on behalf of the general public), request judgment and relief as follows:

1.      Certification of the case as a class action on behalf of the proposed Class, and designation of Plaintiffs as representatives of the Class, and their counsel of record as Class Counsel;

2.      Certification of the case as a class action on behalf of the proposed Subclasses, and designation of Plaintiffs as Subclass representatives, as applicable, and their counsel of record as Subclass Counsel;

3.      Restitution and disgorgement according to proof;

4.      Rescission;

5.      Declaratory and injunctive relief against Ocwen to prevent future wrongful conduct;

6.      Actual, compensatory, statutory, treble, exemplary and/or punitive damages according to proof;

7.      Prejudgment interest at the maximum legal rate;

8.      Costs of the proceedings herein;

9.      Reasonable attorneys' fees;

10.     An accounting; and

11.     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs and all members of the Class hereby request trial by jury as to all issues so triable.

Dated: May 19, 2006

By: s/Kelly M. Dermody _____
    Kelly M. Dermody

Elizabeth J. Cabraser
Kelly M. Dermody
Rachel Geman
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

and

780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

For the Plaintiffs in

    *Patricia Antoine, et*
*al. v. Ocwen Federal Services, Inc.,*
*et al.*


By: _s/Niall P. McCarthy _____
    Niall P. McCarthy

Niall P. McCarthy
Laura Schlichtmann
Ali Abtahi
COTCHETT, PITRE, SIMON & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

For the Plaintiffs in

    *Allie M. Maddox, et al. v.*
*Ocwen Federal Bank, Inc., et al.*


Co-Lead Counsel for Plaintiffs

For the Plaintiffs in

*Michele McAuliffe
and Ryan E. McAuliffe v. US Bank,
N.A., et al.*

*Richard A. Roeh and Margaret M.
Roeh v. Moss, Codilis, Stawiarski, Morris,
Schneider & Prior, LLP, et al.*

*William A. Soto and Marlene Soto v.
Ocwen Federal Bank, FSB, et al.*

*Paul Stalbaum and Bonnie Stalbaum
v. Dodilis, Stawiarski, Morris, Schneider &
Prior, LLP, et al.*

Daniel A. Edelman, Esq.
Cathleen M. Combs, Esq.
EDELMAN, COMBS & LATTURNER, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

Plaintiffs' Liaison Counsel

For the Plaintiffs in

*Lula M. Jackson, et
al. v. Ocwen Federal Bank, FSB, et
al.*

*Arleatha L. Robinson
v. Moss, Dodilis, Stawiarski, Morris,
Schneider & Prior, LLP, et al.*

*Geneva Spires, et al.
v. Ocwen Financial Services, Inc., et
al.*

JENKINS MULLIGAN & GABRIEL LLP
Thomas A. Jenkins
Daniel J. Mulligan
660 Market Street, Third Floor
San Francisco, California 94104
Telephone: (415) 982-8500
Facsimile: (415) 982-8515

For the Plaintiffs in

*Patricia Antoine, et
al. v. Ocwen Financial Services, Inc.,
et al.*

LEFFLER & HYLAND PC
Timothy B. Hyland, Esq.
4163 Chain Bridge Road
FAIRFAX, VA 22030-4102
Telephone: (703) 293-9300
Facsimile: (703) 293-9301

For the Plaintiff in

*William Hearn v.
Ocwen Financial Services, Inc., et al.*

THE TERRELL LAW GROUP
Reginald Terrell, Esq.
223 25th Street
Richmond, California  94804
Telephone:  (510) 237-9700
Facsimile: (510) 237-4616


AMAMGBO & ASSOCIATES
C. Donald Amamgbo, Esq.
1940 Embarcadero
Oakland, California  94606
Telephone:  (510) 434-7800
Facsimile: (510) 434-7804

For the Plaintiffs in

*Jeanette E. Martinez, et al. v. Ocwen
Federal Bank, FSB, et al.*

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTRON & SCHOENBURG, LLP
John C. Bienvenu, Esq.
Caren I. Friedman, Esq.
Post Office Box 8189
Santa Fe, New Mexico  87504-8180
Telephone:  (505) 988-8004
Facsimile:  (505) 982-0307

For the Plaintiffs in

*George McDonald, et
al. v. Ocwen Financial Corporation,
et al.*

LERACH, COUGHLIN, STOIA, GELLAR,
RUDMAN & ROBBINS, LLP
Reed R. Kathrein, Esq.
Jacqueline E. Mottek, Esq.
Shana E. Scarlett, Esq.
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 288-4545
Facsimile:  (415) 288-4534

LAW OFFICES OF JEFFREY KELLER
Jeffrey Keller, Esq.
Four Embarcadero Center, Suite 1400
San Francisco, CA  94111
Telephone:  (415) 296-0889
Facsimile:  (415) 543-7861

MDL NO. 1604
AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

For the Plaintiff in

*Delores B. Moore v.*
*Ocwen Financial Corporation, et al.*

MILDENBERG AND STALBAUM, P.C.
Brian R. Mildenberg, Esq.
Sherri J. Braunstein, Esq.
1616 Walnut Street, Suite 1010
Philadelphia, PA 19103
Telephone: (215) 545-2510

DONOVAN SEARLES, LLC
Michael D. Donovan, Esq.
David A. Searles, Esq.
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067

For the Plaintiffs in

*Geneva Spires, et al.*
*v. Ocwen Financial Services, Inc., et*
*al. and Carreon et al. v. Ocwen*
*Federal Savings Bank, FSB*

RODDY KLEIN & RYAN
Gary Klein, Esq.
John Roddy, Esq.
727 Atlantic Avenue, 2nd Floor
Boston, MA 021111-2810
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

For the Plaintiff in

*Albert Telfer v. Cal-*
*Western and Albert Telfer v. Moss,*
*Codilis*

LAW OFFICES OF RON BOCHNER
Ron K. Bochner
3717 E. Thousand Oaks Blvd.
Westlake Village, CA 91362
Telephone: (805) 413-1044

For the Plaintiffs in

*Napier, et al. v.*
*Ocwen Federal Bank, FSB et al.*

ALGEO, CLARKE & ERICKSON
Bruce J. Blohowiak
102 E. Baldwin Ave.
Spokane, WA 99207
Telephone: (509) 328-6123

EVANS, CRAVEN & LACKIE, P.S.
Hugh T. Lackie
818 W. Riverside, Suite 250
Spokane, WA 99201
Telephone: (509) 455-5200

## CERTIFICATE OF SERVICE

I, Francis R. Greene, hereby certify that on May 19, 2006, I filed the foregoing documents with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to the following in the manner listed below:

s/Francis R. Greene
Francis R. Greene

### VIA Court Electronic Notice

Michael I. Behn
mbehn@behnwyetzner.com

Marc William O'Brien
mobrien@bronson-kahn.com

Daniel Mulligan
dan@jmglawoffices.com

Gary Klein
klein@roddykleinryan.com

Reginald Terrell
reggie2@aol.com

John C. Bienvenu
jbienvenu@rothsteinlaw.com

Reed R. Kathrein
reedk@lerachlaw.com

Jane L. Calamusa
jcalamusa@rcslaw.com

Harold J. Engel
hengel@reedsmith.com

Daniel Matthew Noland
dnoland@dykema.com

Kelly M. Dermody
kdermody@lchb.com

Jeffrey Keller
Jfkeller@kellgrover.com

John Roddy
roddy@roddykleinryan.com

Paul M. Ngobeni
ngobenilaw@aol.com

Jacqueline E. Mottek
jacquim@lerachlaw.com

R. Cooper Shattuck
cshattuck@rcslaw.com

Brian P. Brooks
bbrooks@omm.com

David Chizewer
david.chizewer@goldbergkohn.com

John Duncan
jduncan@piteduncan.com

Richard G. Carlston
rgc@msandr.com

Jon E. Klinghoffer
jon.klinghoffer@goldbergkohn.com

Terrence Kiwala
tkiwala@dykema.com

Douglas W. Stern
dstern@fulbright.com

Andrew Eliot Porter
aporter@bronson-kahn.com

Laura Schlictmann
lschlichtmann@cpsmlaw.com

Neil McCarthy
nmccarthy@cpsmlaw.com

mobrien@bronson-kahn.com
tscarborough@sidley.com
aabtahi@cpsmlaw.com
courtecl@aol.com

**Via E-Mail**

Edward M. Carstarphen
emc@ecdglaw.com

James Cicero Huckaby
Jch@hsdpc.com

Rachel Geman
rgeman@lchb.com

Michael B. Kushner
mkushner@kushnerlawfirm.com

Cristina Platon Camarata
ccamarata@baxterschwartz.com

Joseph A. Moniz
atty_joe_moniz@snet.net

C. Donald Amamgbo
donaldamamgbo@citycom.com

Hugh T. Lackie
htl@ecl-law.com

Jacqueline E. Mottek
Shana Scarlett
jacquim@lerachlaw.com

Niall P. McCarthy
Gloria D. Smith
NmCcarthy@cpsmlaw.com

Michael D. Donovan
David A. Searles
mdonovan@donovansearles.com

Seymour J. Mansfield
smansfield@mansfieldtanick.com

Richard J. Fuller
rfuller@mansfieldtanick.com

O. Max Gardner, III
maxgardner@maxgardner.com

Stephen Henry Gardner

Melvin N. Eichelbaum

steve@consumerhelper.com

Paul W. Rosenbaum
rlo@satx.rr.com

Rhone E. Jones
rhon.jones@beasleyallen.com

William H. Oliver
wholiver@pobllp.com

Steven A. Royston
aroy958447@aol.com

Michael Nathan
legalremedy@juno.com

Al McZeal
almczeal@cschouston.com

John E. Goodman
jgoodman@bradleyarant.com

Vann F. Leonard
vfllaw@bellsouth.net

Charles E. Houston
chouston@ncen.com

Don B. Long
dlong@jbpp.com

George M. Neal
jneal@sirote.com

John W. Scott
jws@hsdpc.com

marlene@eichelbaumlawoffice.com

Bruce J. Blohowiak
bruceb@justice.com

Ron K. Bochner
robolawsouth@yahoo.com

Timothy B. Hyland
Tbh@lefflerhyland.com

Robert C. Hilliard
Bobh@hilliardandmunoz.com

William C. Doutt
doutt@robertsmiceli.com

Robert A. Nicholas
Rnicholas@reedsmith.com

John N. Bolus
jbolus@mcglaw.com

Mark X. Mullin
Mark.mullin@haynesboone.com

Wilson R. Green
Wgreeen@bfgwc.com

Clifton E. Slaten
cslaten@slatenlaw.com

**Via U.S. Mail**

David Sturgeon Garcia
Steven J. Boranian
**Reed Smith LLP**
Two Embarcadero Center, Suite 7936
San Francisco, CA 94111

Elizabeth K. Hwang
Richard G. Carlston
**Miller, Starr & Regalia**
1331 N. California Blvd. 5th Floor
Walnut Creek, CA 94596

Ray Johnson
**Johnson Law Firm**
P.O. Box 27062
West Des Moines, IA 50265

Brian R. Mildenberg
Sherri J. Braunstein
**Mildenberg and Stalbaum, PC**
1845 Walnut Street, 22nd floor
Philadelphia, PA 19103

Christopher P. Burke
**Chris P. Burke & Associates**
216 S. Maryland Parkway
Las Vegas, NV 89101

Geoffrey L. Giles
**Geoffrey L. Giles & Associates**
527 California Avenue
Reno, NV 89509

Peter J. Salmon
**Moss, Pitre & Duncan, LLP**
525 East Main Street
P.O. Box 12289
El Cajon, CA 92022-2289

Luigi Spadafora
**Winget, Spadafora & Schwartzberg**
45 Broadway, 19th Floor
New York, NY 10006

Douglas W. Stern
**Fulbright & Jaworski, LLP**
555 South Flower Street, 41st Floor
Los Angeles, CA 90071

Warren C. Wills
**Thompson & Knight, LLP**
333 Clay Street, Suite 3300
Houston, TX 77002

Richard D. Lively
346 East Main Street
Prattville, AL 36067

Patricia Y. Comer
**Comer & Upshaw, LLP.**
The Denechaud House
2107 Second Avenue North
Birmingham, AL 35203

1 Home Campus
MAC #2501-01D
Des Moines, Iowa 50328

James L. Martin
**James L. Martin, P.C.**
P.O. Box 14
201 E. Broad Street
Eufaula, AL 36072